**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,
*Plaintiff-Appellant*,

v.

JAIME CASTELLANOS-AVALOS,
*Defendant-Appellee.*

No. 20-30181

D.C. No.
2:19-cr-00135-RMP

OPINION

Appeal from the United States District Court
for the Eastern District of Washington
Rosanna Malouf Peterson, District Judge, Presiding

Argued and Submitted October 6, 2021
Seattle, Washington

Filed January 18, 2022

Before: RICHARD A. PAEZ, MILAN D. SMITH, JR.,
and JACQUELINE H. NGUYEN, Circuit Judges.

Opinion by Judge Milan D. Smith, Jr.

# SUMMARY[*]

### Criminal

The panel reversed the district court's order granting Jaime Castellanos-Avalos's motion to dismiss an indictment charging him with returning to the United States after having been ordered removed in violation of 8 U.S.C. § 1326.

Castellanos-Avalos moved to dismiss pursuant to 8 U.S.C. § 1326(d), arguing that his removal order was fundamentally unfair and that procedural defects in his removal proceedings justified setting it aside. The district court granted the motion, reasoning that the failure of Castellanos-Avalos's attorney or the immigration judge to advise Castellanos-Avalos that he could seek voluntary departure excused or satisfied § 1326(d)'s procedural prerequisites for a collateral attack—administrative exhaustion and deprivation of judicial review—and because Castellanos-Avalos could plausibly have been granted that form of relief.

In a criminal proceeding under § 1326, an alien may not challenge the validity of a removal order unless the alien demonstrates exhaustion of available administrative remedies (§ 1326(d)(1)); that the removal proceedings improperly deprived the alien of the opportunity for judicial review (§ 1326(d)(2)); and that entry of the order was fundamentally unfair (8 U.S.C. § 1326(d)(3)).

---

[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

The panel noted that the Supreme Court's May 2021 decision in *United States v. Palomar-Santiago*, 141 S. Ct. 1615 (2021)—which held that a court may not excuse a failure to exhaust administrative remedies and that each of the statutory requirements of § 1326(d) is mandatory—has called into question at least some aspects of this court's framework for recognizing circumstances in which a defendant could overcome both the exhaustion requirement and the deprivation-of-judicial-review requirement.

The panel heeded *Palomar-Santiago*'s reminder that defendants must meet all three requirements of § 1326(d), and was mindful of recent Ninth Circuit opinions expressing doubt about the continued validity of this court's § 1326(d) doctrines after *Palomar-Santiago*. But the panel concluded that it is largely unnecessary to apply *Palomar-Santiago* to these unique facts because under this court's existing case law, Castellanos-Avalos cannot satisfy § 1326(d)'s deprivation-of-judicial-review requirement, given that Castellanos-Avalos did, in fact, seek judicial review, and received it.

Because Castellanos-Avalos failed to show that he was deprived of the opportunity for judicial review, as he was required to do in order to collaterally attack his removal order, the panel did not need to consider the government's other arguments. The panel remanded for further proceedings, including reinstatement of the indictment.

**COUNSEL**

Michael J. Ellis (argued), Assistant United States Attorney; Joseph H. Harrington, Acting United States Attorney; United States Attorney's Office, Spokane, Washington; for Plaintiff-Appellant.

William Miles Pope (argued) and J. Stephen Roberts Jr., Federal Defenders of Eastern Washington & Idaho, Spokane, Washington, for Defendant-Appellee.

**OPINION**

M. SMITH, Circuit Judge:

Defendant-appellee Jaime Castellanos-Avalos, a citizen of Mexico, was ordered removed from the United States by an Immigration Judge (IJ) in 2005. He was removed after unsuccessfully appealing the order to both the Board of Immigration Appeals (BIA) and our court. Several years later, Castellanos-Avalos was indicted for returning to the United States after having been ordered removed in violation of 8 U.S.C. § 1326. He moved to dismiss the indictment, arguing that his removal order was fundamentally unfair and that procedural defects in his removal proceedings justified setting it aside pursuant to 8 U.S.C. § 1326(d). The district court granted the motion, and the United States appealed. We have jurisdiction pursuant to 18 U.S.C. § 3731 and 28 U.S.C. § 1291, and we reverse.

**FACTUAL AND PROCEDURAL BACKGROUND**

The salient facts of this case are undisputed. Castellanos-Avalos arrived in the United States as a child in 1989. He was placed in removal proceedings in Tacoma,

Washington in 2005 after being convicted for possession of stolen property and reckless endangerment. He retained then-attorney Theodore Mahr[1] to represent him in the removal proceedings.

In an early appearance before the IJ, Mahr conceded that Castellanos-Avalos was removable, but asked for and received permission to file a brief exploring his client's eligibility for relief. Two weeks later, Mahr filed a two-paragraph brief incorrectly stating that Castellanos-Avalos's family had applied for lawful permanent resident status on his behalf and indicating that Mahr planned to seek a gubernatorial pardon for Castellanos-Avalos's recent convictions. The IJ held a removal hearing shortly thereafter, concluded that Castellanos-Avalos was ineligible for relief, and ordered him removed. Mahr filed an appeal that the BIA denied in April 2006.

While Castellanos-Avalos's appeal was under consideration at the BIA, his family hired attorney Manuel Rios III to pursue a state-bar complaint against Mahr on Castellanos-Avalos's behalf. Castellanos-Avalos's complaint identified Mahr's failure to request the only relief he was arguably entitled to, voluntary departure.[2] Rios also

---

[1] Mahr was disbarred in 2010 after a three-year suspension for various forms of misconduct in numerous immigration matters, including forging client signatures, missing hearings, and failing to diligently represent his clients.

[2] "Voluntary departure is a discretionary form of relief that allows certain favored aliens—either before the conclusion of removal proceedings or after being found [removable]—to leave the country willingly." *Dada v. Mukasey*, 554 U.S. 1, 8 (2008). A major benefit of voluntary departure is that it "facilitates the possibility of readmission" to the United States. *Id.* at 11.

offered Castellanos-Avalos advice about his immigration proceedings, telling him "he was only eligible for voluntary departure relief in his proceedings" and that "the best we [can] do [is] to reopen the case" based on Mahr's poor lawyering "and then ask for voluntary departure."

After the BIA denied his administrative appeal, Castellanos-Avalos appealed *pro se* to our court. He also filed a motion with the BIA to reopen his removal proceedings, which was denied. *See In Re: Jaime Castellanos-Avalos*, No. AXX XX6 072-TA, 2007 WL 686632, at *1 (BIA Feb. 1, 2007) (unpublished). We denied both Castellanos-Avalos's original appeal and his appeal of the BIA's denial of his motion to reopen in an unpublished decision. *See Castellanos-Avalos v. Mukasey*, 292 F. App'x 575, 576–77 (9th Cir. 2008) (unpublished). None of these appeals or requests for relief mentioned voluntary departure.[3]

Castellanos-Avalos was removed to Mexico in November 2008, but returned to the United States at some point. In September 2019, he was indicted in the Eastern District of Washington for being found in the United States after having been ordered removed in violation of 8 U.S.C.

---

[3] The excerpts of record submitted by the parties include copies of the BIA and Ninth Circuit decisions mentioned in this paragraph, and the citations to them are included only for convenience. The excerpts of record also contain brief references to district court habeas petitions that Castellanos-Avalos filed *pro se* challenging his immigration detention. We note that orders dismissing with prejudice two habeas petitions filed by Castellanos-Avalos appear to be available on Westlaw. *See Castellanos-Avalos v. Clark*, No. C06-1562-JLRJPD, 2007 WL 1600635 (W.D. Wash. June 1, 2007) (adopting report and recommendation); *Castellanos v. Clark*, No. C07-573-RSM-MJB, 2007 WL 1556295 (W.D. Wash. May 25, 2007) (same). We do not rely on the habeas petitions for our disposition.

§ 1326.  He moved to dismiss the indictment by collaterally attacking his removal order.  The district court granted the motion, reasoning that the failure of Mahr or the IJ to advise Castellanos-Avalos that he could seek voluntary departure excused or satisfied § 1326(d)'s procedural prerequisites for a collateral attack—administrative exhaustion and deprivation of judicial review—and because it found that Castellanos-Avalos could plausibly have been granted that form of relief.  The government timely appealed.

We review de novo the district court's dismissal of the indictment.  *See United States v. Reyes-Bonilla*, 671 F.3d 1036, 1042 (9th Cir. 2012).

## ANALYSIS

"In a criminal proceeding under [8 U.S.C. § 1326], an alien may not challenge the validity of [a removal] order . . . unless the alien demonstrates that—(1) the alien exhausted any administrative remedies that may have been available to seek relief against the order; (2) the [removal] proceedings at which the order was issued improperly deprived the alien of the opportunity for judicial review; and (3) the entry of the order was fundamentally unfair."  8 U.S.C. § 1326(d). The government argues that Castellanos-Avalos cannot satisfy the procedural prerequisites for a collateral attack in § 1326(d)(1) and (d)(2).[4]    It also contests whether

---

[4] The government's opening brief argued that Castellanos-Avalos failed to exhaust his administrative remedies because he was told about voluntary departure but never sought it at the administrative level. However, the government reversed course at oral argument, stating unequivocally that Castellanos-Avalos's administrative appeal to the BIA satisfied § 1326(d)(1)'s exhaustion requirement.  Either way, it was improper to dismiss the indictment because Castellanos-Avalos cannot satisfy § 1326(d)(2).

Castellanos-Avalos was prejudiced from the defects in his immigration proceedings, which our circuit has held is necessary to establish fundamental unfairness under § 1326(d)(3). *See United States v. Ubaldo-Figueroa*, 364 F.3d 1042, 1048 (9th Cir. 2004). We agree that Castellanos-Avalos was not deprived of an opportunity for judicial review because he "*did*, in fact, seek judicial review," *United States v. Gonzalez-Villalobos*, 724 F.3d 1125, 1132 (9th Cir. 2013) (emphasis in original), and he received it. Consequently, it is unnecessary to consider the government's other arguments. *See id.* at 1132–33.

## I.

We begin by noting a recent development. As of April 2021, when the briefing in this case closed, our court recognized three circumstances in which a defendant could overcome both § 1326(d)(1)'s exhaustion requirement and § 1326(d)(2)'s deprivation-of-judicial-review requirement: (1) "when the IJ failed to inform the alien that he had a right to appeal his [removal] order to the BIA;" (2) when the IJ failed "to inform the alien that he is eligible for a certain type of relief;" and (3) when the defendant waived his right to appeal to the BIA, but can show that "his waiver was not considered and intelligent." *Gonzalez-Villalobos*, 724 F.3d at 1130–31. In such scenarios, we explained that the defendant was "excused" from § 1326(d)(1)'s exhaustion requirement because he was effectively "deprived of his right to appeal to the BIA," and that the defendant "satisfied" § 1326(d)(2)'s deprivation-of-judicial-review requirement because an inability to seek an administrative appeal "typically" also prevents judicial review. *Id.* at 1130 & n.7. For similar reasons, we have held that a showing of ineffective assistance of counsel can justify a failure to exhaust and satisfy the judicial review requirement. *See*

*United States v. Lopez-Chavez*, 757 F.3d 1033, 1044 (9th Cir. 2014).

The Supreme Court's May 2021 decision in *United States v. Palomar-Santiago*, 141 S. Ct. 1615 (2021), has called at least some aspects of this framework into question. *Palomar-Santiago* concerned a different circumstance in which our court's precedents permitted excusal of a failure to comply with § 1326(d)'s procedural requirements. Specifically, we had held that § 1326 defendants who had been ordered removed due to a criminal conviction were "'excused from proving the first two requirements' of § 1326(d) if they were 'not convicted of an offense that made [them] removable.'" *Palomar-Santiago*, 141 S. Ct. at 1620 (quoting *United States v. Ochoa*, 861 F.3d 1010, 1015 (9th Cir. 2017)). The Supreme Court disagreed, holding that "a court may not excuse a failure to exhaust" administrative remedies pursuant to § 1326(d)(1), *id.* at 1621 (quoting *Ross v. Blake*, 578 U. S. 632, 639 (2016)), and that "each of the statutory requirements of § 1326(d) is mandatory," *id.* at 1622.

Prior to oral argument, the government submitted a letter addressing *Palomar-Santiago* and contending that it supported reversing the district court. Because both Castellanos-Avalos and the government necessarily relied on our court's pre-*Palomar-Santiago* precedents in their appellate briefs, we ordered the parties to be prepared to discuss the case. Oral argument focused primarily on *Palomar-Santiago*'s possible impact on this appeal.

Having considered the parties' arguments, we conclude that it is largely unnecessary to apply *Palomar-Santiago* to these unique facts. We heed *Palomar-Santiago*'s reminder that—consistent with the use of the word "and" in the text of § 1326(d)—"defendants must meet *all three*" requirements

of § 1326(d), meaning that a failure to satisfy *any* of the three prongs dooms a collateral attack on a removal order. 141 S. Ct. at 1620–21 (emphasis added); *see also id.* at 1622 ("The Court holds that *each* of the statutory requirements of § 1326(d) is mandatory." (emphasis added)). We are also mindful of recent opinions by our court expressing doubt about the continued vitality of our § 1326(d) doctrines after *Palomar-Santiago*. *See Zamorano v. Garland*, 2 F.4th 1213, 1225 (9th Cir. 2021); *see also Alam v. Garland*, 11 F.4th 1133, 1137–38 (9th Cir. 2021) (en banc) (Bennett, J., concurring); *United States v. Bastide-Hernandez*, 3 F.4th 1193, 1197 (9th Cir. 2021), *reh'g en banc granted, opinion vacated*, — F.4th —, 2021 WL 6134032 (9th Cir. 2021). However, because Castellanos-Avalos cannot satisfy § 1326(d)(2)'s deprivation-of-judicial review requirement under our existing case law, we need not decide whether an opposite conclusion would run afoul of *Palomar-Santiago*.

## II.

"[T]he requirements of 8 U.S.C. § 1326(d) . . . make clear that it is not enough for the defendant to show that 'the entry of the [removal] order was fundamentally unfair,' as required by (d)(3), and that he exhausted his administrative remedies, as required by (d)(1); he must *also* show that 'the [removal] proceedings at which the order was issued improperly deprived [him] of the opportunity for judicial review.'" *Gonzalez-Villalobos*, 724 F.3d at 1132 (quoting 8 U.S.C. § 1326(d)) (emphasis in original). Castellanos-Avalos received ample judicial review, so he could not have been deprived of even "the opportunity" for it. 8 U.S.C. § 1326(d)(2). He appealed the BIA's denial of his administrative appeal to our court, and later did the same respecting the BIA's denial of his motion to reopen. We reviewed both petitions and denied them (primarily) on the

merits. *See Castellanos-Avalos*, 292 F. App'x at 576–77 (holding jurisdiction was lacking as to one issue).

Our precedents confirm this commonsense application of § 1326(d)(2). We have only held defendants to have been deprived of judicial review under § 1326(d)(2) when there was no judicial review *whatsoever* of their removal order. *See, e.g.*, *Lopez-Chavez*, 757 F.3d at 1041 (defendant's attorney "failed to appeal to the BIA and then petition the Seventh Circuit" for relief from removal order despite "clear basis" for doing so); *United States v. Ramos,* 623 F.3d 672, 682 (9th Cir. 2010) (defendant's "waiver of his right to appeal [his] removal order was procedurally defective and deprived him of the opportunity for meaningful judicial review"). This reflects the rationale that "where the defendant has failed to identify any obstacle that prevented him from obtaining judicial review of a deportation order, he is not entitled to such review as part of a collateral attack under 8 U.S.C. § 1326(d)." *Gonzalez-Villalobos*, 724 F.3d at 1132 (citations omitted); *see also id.* at 1133 ("the defendant must show an actual or constructive inability to seek judicial review . . . to satisfy § 1326(d)(2)").

Put simply, Castellanos-Avalos had an "opportunity" for judicial review because (speaking figuratively) "the doors to the courts were open" to him on more than one occasion, and he in fact made use of them. *United States v. Hinojosa-Perez,* 206 F.3d 832, 836 (9th Cir. 2000); *accord Gonzalez-Villalobos*, 724 F.3d at 1132–33. In both its appellate briefing and its briefing in the district court, the government argued prominently that this fact distinguished his case from others where we have allowed a collateral attack pursuant to § 1326(d). Strikingly, neither Castellanos-Avalos's answering brief nor the district court's order cited a single Ninth Circuit or Supreme Court case that would rebut this

contention, and we have not found one.  To the contrary, we
have held that § 1326(d)(2) was not satisfied in cases where
there was far less scrutiny from the courts.  *See Gonzalez-
Villalobos*, 724 F.3d at 1132 (holding that defendant had
opportunity for judicial review and emphasizing that
petitioner "*did*, in fact, seek judicial review," namely "a
petition for writ of habeas corpus" that he later withdrew
voluntarily (emphasis in original)).

The cases relied upon by Castellanos-Avalos are
distinguishable not just because of the ample judicial review
he received, but for other reasons as well.[5]  For example, in
*United States v. Arias-Ordonez*, we held that the defendant
had met the requirements of § 1326(d)(1) and (d)(2) not only
because he was told "unequivocally that there was nothing
he could do" to challenge his removal, but also because there
was no other "indication he knew how to pursue
administrative or judicial remedies."  597 F.3d 972, 977 (9th
Cir. 2010).  Conversely, the fact that Castellanos-Avalos
filed two direct appeals and two habeas petitions shows that
he understood how to pursue judicial relief.  *Cf. Hinojosa-
Perez*, 206 F.3d at 836 (noting that defendant's past filing of

---

[5] As a result, we need not decide whether it is possible for a
defendant to have been deprived of an opportunity for judicial review
even where some form of review occurred.  We note that the Supreme
Court has held that at least "*some* meaningful review" must be available
for a removal order, *United States v. Mendoza-Lopez*, 481 U.S. 828, 838
(1987) (emphasis in original), and § 1326(d) was enacted in response to
that holding, *Palomar-Santiago*, 141 S. Ct. at 1619 (explaining that
Congress enacted § 1326(d) as part of the Antiterrorism and Effective
Death Penalty Act of 1996 in response to *Mendoza-Lopez*).  *Cf. United
States v. Barajas-Alvarado*, 655 F.3d 1077, 1083 (9th Cir. 2011)
(Supreme Court has provided "little direct guidance" about scope of right
to judicial review in this context).

a notice of appeal to the BIA showed he was "familiar with the [administrative] appeal process").

Castellanos-Avalos also cites to *United States v. Rojas-Pedroza*, 716 F.3d 1253 (9th Cir. 2013), claiming that it requires us to hold that the IJ's failure to advise him of his potential eligibility for voluntary departure constitutes a deprivation of judicial review. To be sure, *Rojas-Pedroza* explained that an IJ's failure to inform a non-citizen that he is eligible for relief from removal may cause a deprivation of the opportunity for judicial review. *Id.* at 1262–63. However, *Rojas-Pedroza* itself did not reach the judicial review issue, *see id.* at 1264 (noting "ambiguity in the record" about defendant's eligibility for relief and resolving appeal based on lack of prejudice), and cited *United States v. Arrieta*, 224 F.3d 1076 (9th Cir. 2000), for the failure-to-inform principle, *see* 716 F.3d at 1262–63. The reasoning of that case is inapplicable to Castellanos-Avalos's situation.

*Arrieta* held that the defendant had met the procedural prerequisites of § 1326(d) despite having waived his right to appeal. *Id.* at 1079. It reasoned that the defendant had no opportunity to "make a considered and intelligent decision about his right to appeal" because "the IJ never informed him of his eligibility" for a particular form of relief or "any other possible mechanism" to avoid removal, and so he was deprived of "a meaningful opportunity for judicial review." *Id.* at 1079. However, *Arrieta*'s premise was that "presumably . . . an alien who is not made aware that he has a right to seek relief necessarily has no meaningful opportunity to appeal the fact that he was not advised of that right." *Id.* (citing *United States v. Arce-Hernandez*, 163 F.3d 559, 563 (9th Cir. 1998)); *accord Rojas-Pedroza*, 716 F.3d at 1262–63 (quoting this language).

While it would ordinarily be reasonable to assume that someone who had been misled into believing that he had no grounds for an appeal would not bother filing one, that is clearly not what happened here: as discussed, Castellanos-Avalos actively pursued judicial relief, and this court has already reviewed the legality of his removal order. Moreover, the record in this case demonstrates that Castellanos-Avalos was "made aware" of his possible entitlement to voluntary departure by attorney Rios before seeking judicial review. Consequently, the failure-to-inform principle discussed by *Rojas-Pedroza* and *Arrieta* is inapposite.

## CONCLUSION

Castellanos-Avalos has failed to show that he was "deprived . . . of the opportunity for judicial review," as he was required to do in order to collaterally attack his removal order. 8 U.S.C. § 1326(d)(2). For that reason, the district court's order dismissing the indictment is reversed. The case is remanded for further proceedings, including reinstatement of the indictment.

**REVERSED and REMANDED.**