# United States Court of Appeals for the Fifth Circuit

———————

No. 23-11170

———————

United States Court of Appeals
Fifth Circuit

**FILED**

November 8, 2024

Lyle W. Cayce
Clerk

United States of America,

*Plaintiff—Appellee*,

*versus*

Jose Guadalupe Hernandez Velasquez,

*Defendant—Appellant*.

———————————————————————

Appeal from the United States District Court
for the Northern District of Texas
USDC No. 3:22-CR-461-1

———————————————————————

Before Jones, Barksdale, and Ho, *Circuit Judges*.

Edith H. Jones, *Circuit Judge*:

Jose Guadalupe Hernandez Velasquez appeals his conviction for one count of illegal reentry into the United States after deportation in violation of 8 U.S.C. § 1326. He was sentenced to time served, two years of supervised release, and was surrendered to immigration officials for deportation. Hernandez Velasquez alleges that the district court erred in denying his motion to dismiss the indictment because it placed the burden on him to prove the invalidity of his waiver of rights in connection with the underlying deportation, rather than on the government to prove the waiver's validity. The district court's burden allocation was proper. The evidence shows, in

No. 23-11170

any event, that the burden allocation was not outcome determinative. As a result, we AFFIRM the judgment of the district court.

I.

In October 2022 Hernandez Velasquez was found by immigration authorities unlawfully present in the United States for the fifth time. In one such previous encounter in 2019, Hernandez Velasquez signed a written stipulation waiving his rights and agreeing to his removal. He was subsequently removed. When found again in the country in October 2022, he was charged with one count of illegal reentry into the United States after deportation in violation of 8 U.S.C. § 1326. Hernandez Velasquez moved to dismiss the indictment, alleging that the underlying removal order was "fundamentally unfair" because his "waiver of the immigration hearing and stipulation to removal was unknowing, unintelligent, and involuntary." The district court denied the motion to dismiss, placing the burden on Hernandez Velasquez to prove the waiver's invalidity by a preponderance of the evidence. It found that he did not meet that burden. And it subsequently found that he had not satisfied the administrative exhaustion requirement of § 1326(d)(1).

This court reviews the district court's denial of a motion to dismiss an indictment de novo. *United States v. Villanueva-Diaz*, 634 F.3d 844, 848 (5th Cir. 2011) (citation omitted). Contrary to Hernandez Velasquez's assertion, the district court's initial factual findings were wholly distinct from its burden allocation and thus could not be induced by a potentially "erroneous view of the law." *United States v. Mississippi*, 82 F.4th 387, 391 (5th Cir. 2023). The factual findings made by the district court are thus accepted unless clearly erroneous. *Villanueva-Diaz*, 634 F.3d at 848 (citation omitted).

No. 23-11170

## II.

An alien indicted for illegal reentry pursuant to 8 U.S.C. § 1326 may collaterally attack the underlying removal order. *United States v. Parrales-Guzman*, 922 F.3d 706, 707 (5th Cir. 2019) (citation omitted). Section 1326(d) mandates that "an alien may not challenge the validity of the deportation order . . . unless the alien demonstrates that— (1) the alien exhausted any administrative remedies that may have been available to seek relief against the order; (2) the deportation proceedings at which the order was issued improperly deprived the alien of the opportunity for judicial review; and (3) the entry of the order was fundamentally unfair." The statute thus establishes "three prerequisites that defendants facing unlawful-reentry charges must satisfy before they can challenge their original removal orders." *United States v. Palomar-Santiago*, 593 U.S. 321, 324, 141 S. Ct. 1615, 1619 (2021). The district court found that Hernandez Velasquez validly stipulated to his removal and waived his ability to satisfy these prerequisites. That is fatal.

Hernandez Velasquez's sole argument on appeal, however, is that the district court erred when it determined that "here, where the Government has produced a written and signed waiver of rights, it is Defendant who must prove, by a preponderance of the evidence, that the waiver was invalid." Hernandez Velasquez further contends that his allegedly invalid waiver excuses him from satisfying the administrative exhaustion and judicial review conditions of § 1326(d). We need not determine whether to recognize such an exception to *Palomar-Santiago*, however, because Hernandez Velasquez's waiver was not invalid.

This court has not yet determined who bears the burden of proof when a written waiver and stipulation to removal is challenged. In the Ninth Circuit, "[t]he government bears the burden of proving valid waiver in a

3

collateral attack of the underlying removal proceedings," even when that waiver is written and signed by the defendant. *United States v. Gomez*, 757 F.3d 885, 893 (9th Cir. 2014). But the First, Third, Seventh, and Tenth Circuits place the burden on the defendant to prove the invalidity of a signed written waiver. *See United States v. Soto-Mateo*, 799 F.3d 117, 121 (1st Cir. 2015); *Richardson v. United States*, 558 F.3d 216, 222 (3d Cir. 2009); *United States v. Baptist*, 759 F.3d 690, 697 (7th Cir. 2014); *United States v. Rangel de Aguilar*, 308 F.3d 1134, 1139 (10th Cir. 2002). We join the majority of circuits to have addressed this issue. Where, as here, the government has produced a written and signed stipulation to removal and waiver of rights, the burden rests with the defendant to show that the stipulation and waiver was invalid.

First, a defendant's ability to collaterally attack an underlying removal order is subject to the prerequisites of § 1326(d). The plain language of the statute places the burden on the defendant to demonstrate compliance with its requirements and his entitlement to collaterally attack the underlying order. "[A]n alien may not challenge the validity of a deportation order . . . unless the alien demonstrates that" he has met the statutory prerequisites. 8 U.S.C. § 1326(d); *see also Palomar-Santiago*, 593 U.S. at 326, 141 S. Ct. at 1620 ("[D]efendants charged with unlawful reentry 'may not' challenge their underlying removal orders 'unless' they 'demonstrat[e]' that three conditions are met . . . .") (quoting § 1326(d)). Because a defendant bears the burden of proving his compliance with the statutory requirements, it follows "that a defendant bears the burden of proving his eligibility for any exception to the statutory requirements." *Soto-Mateo*, 799 F.3d at 121.

A holding consistent with Ninth Circuit precedent would irrationally bifurcate the burden of proof under § 1326(d)(3). That section requires that "the entry of the [removal] order was fundamentally unfair." An entry is fundamentally unfair if (1) the defendant did not receive procedural due process, and (2) the defendant suffered prejudice. *United States v. Lopez-*

*Vasquez*, 227 F.3d 476, 485 (5th Cir. 2000). Hernandez Velasquez would have us place the burden on the government to prove a waiver's validity and thus that a defendant was not denied procedural due process, *see Gomez*, 757 F.3d at 893, yet then place the burden on the defendant to prove that he suffered prejudice. *See id.* at 898. Nothing suggests such an unnatural bifurcation of the burden of proof under § 1326(d)(3). Indeed, this circuit's precedent supports the opposite. *See Lopez-Vasquez*, 227 F.3d at 485 ("Because he cannot show that his removal proceeding was fundamentally unfair [as a matter of procedural due process], . . . [the] removal order may permissibly serve as a basis for his conviction under 8 U.S.C. § 1326.").

Second, placing the burden on the government would ignore the import of the written and signed waiver itself. The government's production of a signed and written stipulation and waiver satisfied its initial burden to prove waiver and mandate removal. 8 C.F.R. § 1003.25(b); *see also Richardson*, 558 F.3d at 222 ("the burden of proving waiver in this case [initially] was on the government and . . . it carried its burden by producing the written waiver signed by" the defendant). It follows that an individual who seeks to challenge a signed and written stipulation and waiver, which is sufficient both to warrant removal pursuant to 8 C.F.R. § 1003.25 and to satisfy one element of conviction pursuant to 8 U.S.C. § 1326(a), should bear the burden to prove the waiver's invalidity.

Third, we find dubious the Ninth Circuit's conclusion that a stipulation and waiver in the immigration context is analogous to the waiver of a fundamental constitutional right. *See Gomez*, 757 F.3d at 894 (citing *Brewer v. Williams*, 430 U.S. 387, 404, 97 S. Ct. 1232, 1242 (1977)). "A deportation hearing is a civil, not a criminal, action." *United States v. Benitez-Villafuerte*, 186 F.3d 651, 657 (5th Cir. 1999) (citations omitted). And "[t]he power to expel aliens is essentially a power of the political branches of government, which may be exercised entirely through executive officers,

with such opportunity for judicial review of their action as Congress may see fit to authorize or permit." *Id.* (citations omitted). "[S]uch review is not guaranteed by the Constitution." *Id.* Here, Hernandez Velasquez did not waive a fundamental constitutional right akin to protected rights during criminal prosecution, but "*statutory* right[s] . . . the result of a *civil* deportation proceeding." *United States v. Lopez-Vasquez*, 1 F.3d 751, 758 (9th Cir. 1993) (O'Scannlain, J., dissenting from denial of rehearing en banc) (emphasis in original). We reject the false equivalence between waiver in a criminal proceeding in an Article III court and waiver in an immigration proceeding before an Article II immigration judge. *See Richardson*, 558 F.3d at 221.

In this context, any analogy to *Brewer* and fundamental constitutional rights is misplaced. Removal proceedings provide for statutory rights to, for example, a potential administrative remedy and judicial review, which Hernandez Velasquez waived. *See* § 1326(d). Any related constitutional right is only implicated in a later and wholly separate criminal proceeding, and only under a narrow set of circumstances. *See United States v. Mendoza-Lopez*, 481 U.S. 828, 838, 107 S. Ct. 2148, 2155 (1987) (The Constitution requires that "where the defects in an administrative proceeding foreclose judicial review of that proceeding, an alternative means of obtaining judicial review must be made available before the administrative order may be used to establish conclusively an element of a criminal offense."). Congress codified *Mendoza-Lopez* in § 1326(d). *Palomar-Santiago*, 593 U.S. at 324, S. Ct. at 1619. Only *after* the prerequisites of § 1326(d) are satisfied would a defendant's inability to collaterally attack a removal order rise to the level of constitutional infirmity. Hernandez Velasquez's waiver foreclosed a later opportunity to collaterally attack the underlying removal order in a criminal proceeding because it foreclosed his ability to satisfy the requirements of

6

§ 1326(d). Yet this consequence of his waiver does not change *what* he waived—statutory rights.

The district court applied the proper burden of proof. When the government produces a written and signed stipulation and waiver, the burden rests on the defendant to show its invalidity pursuant to § 1326(d).

## III.

In this case, in any event, the district court's burden allocation was not outcome determinative. There is "no reasonable probability" that placing the burden on the defendant rather than the government affected the outcome of the proceeding. *See Lowenfield v. Phelps*, 817 F.2d 285, 295 (5th Cir. 1987). Even if the district court had committed error, we conclude that error was harmless beyond a reasonable doubt. *Id.*

In 2019, Hernandez Velasquez completed a ten-page stipulation attesting to his removability from the United States and waiving any associated rights he may have had. He executed the form in his writing, initialed the bottom of each page, and signed the document. The stipulation advised Hernandez Velasquez in English and Spanish of his rights and the rights he was waiving. Nevertheless, he moved to dismiss the indictment, claiming that the waiver was not knowing, voluntary, or intelligent. He alleges, for example, that he "was merely told where to initial and sign on the stipulation," "was not given sufficient time to review it," signed the stipulation "because [he] was told [he] had to" and was promised the immigration process would be expedited as a result. The entire process allegedly "took less than five minutes."

The district court conducted an evidentiary hearing at which immigration officer Carlos Abeyta testified. The court "credit[ed] Abeyta's statements that he only printed the stipulation *after* Defendant indicated that he did not want a hearing before an Immigration Judge, it has never taken five

minutes to complete a stipulation, and Abeyta has never instructed a noncitizen to sign and initial a stipulation with a promise that their immigration process would be expedited as a result." The court found that "Abeyta's testimony comports with the statements Defendant attested to in the signed stipulation as well as the Certification of Immigration Officer signed by Abeyta." In the Certification of Immigration Officer, Abeyta contemporaneously attested that Hernandez Velasquez read the entire stipulation in English and read aloud four paragraphs for Abeyta to ensure his comprehension. The court found Abeyta's testimony "credible." In so doing, the district court implicitly rejected the contrary affidavit proffered by Hernandez Velasquez.

The district court's additional findings further undermined Hernandez Velasquez's affidavit claiming invalidity. For example, his motion alleges that he "did not understand the document he was signing," at least in part because he "struggles with some [English] vocabulary." Yet at the hearing, "Defendant confirmed that there is no issue with his understanding of the English language" and "that he did not need a Spanish interpreter to understand the hearing." Hernandez Velasquez grew up and received an education in the United States. And the stipulation had "Spanish language provisions under every English language paragraph." The district court further noted that "this is not the Defendant's first rodeo," he "accurately provided information required of him with the stipulation," "did not ask any questions [or] request additional time to review the documents," and was accompanied by a deportation officer during the process who could explain the stipulation's provisions. Hernandez Velasquez has provided no evidence to suggest that the district court's findings on this score are clearly erroneous. *See Villanueva-Diaz*, 634 F.3d at 848.

Based on its findings, the district court concluded that "the evidence when viewed as a whole support[s] the finding that [Defendant's] waiver and stipulation was entered knowingly, voluntarily, and intelligently." "Really, it appears pretty clear to [the district court] that the Defendant understood, knowingly and willingly waived his right to appeal." Again, in its written order the court stated: "Considering the evidence presented, the Court finds that Defendant's stipulation was knowing, voluntary, and intelligent." The evidence adduced at the hearing supports this conclusion irrespective of where the burden of proof lay. Neither the record nor Hernandez Velasquez's briefing rebuts the district court's findings. Hernandez Velasquez provides no evidence suggesting that a different burden allocation would have led to a different result. *See Lowenfield*, 817 F.2d at 295.

## IV.

The district court did not err in its burden allocation. Where, as here, the government has produced a written and signed stipulation and waiver, the burden rests with the defendant to prove that the waiver was invalid in a collateral attack pursuant to 8 U.S.C. § 1326(d). Even if the district court had erred in its burden allocation, based on the uncontroverted evidence proffered by the government, that determination is harmless beyond a reasonable doubt. *See id.*; *United States v. Patterson*, 431 F.3d 832, 837 (5th Cir. 2005). The government would have been able to prove by a preponderance of the evidence that the stipulation and waiver was knowing, voluntary, and intelligent. The judgment of the district court is accordingly AFFIRMED.