Filed 9/26/22

**CERTIFIED FOR PUBLICATION**


IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO


| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>MIGUEL LOPEZ,<br><br>    Defendant and Appellant. | B315320<br><br>(Los Angeles County<br>Super. Ct. No. LA030413) |

APPEAL from an order of the Superior Court of Los Angeles County.  Martin Larry Herscovitz, Judge.  Reversed and remanded with directions.

Christopher Lionel Haberman, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Senior Assistant Attorney General, Noah P. Hill and Steven D. Matthews, Deputy Attorneys General, for Plaintiff and Respondent.

_____

Miguel Lopez appeals the denial of his motion to withdraw his plea and vacate his conviction pursuant to Penal Code[1] section 1473.7, subdivision (a).

The Legislature has declared that section 1473.7, as amended by Assembly Bill No. 2867, "shall be interpreted in the interests of justice and consistent with the findings and declarations made in Section 1016.2 of the Penal Code." (Stats 2018, ch. 825, § 1, subd. (c).) Among other legislative findings and declarations, section 1016.2 provides:

"(g) The immigration consequences of criminal convictions have a particularly strong impact in California. One out of every four persons living in the state is foreign-born. One out of every two children lives in a household headed by at least one foreign-born person. The majority of these children are United States citizens. It is estimated that 50,000 parents of California United States citizen children were deported in a little over two years. Once a person is deported, especially after a criminal conviction, it is extremely unlikely that he or she ever is permitted to return.

"(h) It is the intent of the Legislature to codify *Padilla v. Kentucky*[2] and related California case law and to encourage the growth of such case law in furtherance of justice and the findings and declarations of this section."

In *People v. Vivar* (2021) 11 Cal.5th 510, 516 (*Vivar*), our Supreme Court elaborated on these findings:

"The population of the United States includes millions of immigrants who arrived as children, attended schools, and found

---

[1] Undesignated statutory references are to the Penal Code.

[2] *Padilla v. Kentucky* (2010) 559 U.S. 356 [176 L.Ed.2d 284, 130 S.Ct. 1473].

2

work here.  (See *Department of Homeland Security v. Regents of Univ. of Cal.* (2020) 591 U.S. ___ [207 L.Ed.2d 353, 140 S.Ct. 1891, 1932] (conc. & dis. opn. of Kavanaugh, J.).)  Whether they become citizens or not, these immigrants' ties to our country are evident not only in their work and schooling, but in how they've formed attachments and families of their own.  In contrast, what ties they once had to their country of birth—from which they may lack even memories—often slip away.  So when long-standing noncitizen residents of this country are accused of committing a crime, the most devastating consequence may not be a prison sentence, but their removal and exclusion from the United States.  (See *People v. Martinez* (2013) 57 Cal.4th 555, 563 (*Martinez*).)  Because the prospect of deportation 'is an integral part,' and often even 'the most important part,' of a noncitizen defendant's calculus in responding to certain criminal charges (*Padilla v. Kentucky* (2010) 559 U.S. 356, 364 [176 L.Ed.2d 284, 130 S.Ct. 1473] (*Padilla*)), both the Legislature and the courts have sought to ensure these defendants receive clear and accurate advice about the impact of criminal convictions on their immigration status, along with effective remedies when such advice is deficient.  (E.g., Pen. Code, §§ 1016.2 et seq., 1473.7; *Jae Lee v. United States* (2017) 582 U.S. ___ [198 L. Ed. 2d 476, 137 S.Ct. 1958] (*Lee*); *Padilla*, at p. 360; *Martinez*, at p. 559; *People v. Superior Court* (*Giron*) (1974) 11 Cal.3d 793, 798.)"

Against this backdrop, appellant contends that at the time of his plea, defense counsel failed to advise him that he would be subject to mandatory deportation and permanent exclusion from the United States as a consequence of pleading no contest to an aggravated felony under federal immigration law.  As a result, appellant suffered prejudicial error which damaged his ability to

3

meaningfully understand, defend against, and knowingly accept the actual adverse immigration consequences of the conviction and sentence resulting from his plea. Appellant maintains that because his claim of prejudicial error was supported by objective corroborative evidence, the superior court erroneously denied his motion to withdraw his plea and vacate his conviction.

We conclude appellant has demonstrated a reasonable probability that if he had been properly advised of the immigration consequences of his plea, he would not have pleaded no contest to an offense that would subject him to mandatory deportation from the United States. Accordingly, we reverse and remand with instructions to grant appellant's motion to withdraw his plea and vacate his conviction pursuant to section 1473.7, subdivision (e).

## FACTUAL AND PROCEDURAL BACKGROUND

1. *The charged offenses*[3]

Between December 22, 1997, and May 20, 1998, appellant and codefendant Gustavo Montoya took or attempted to take money from four businesses by threatening the employees with what appeared to be a handgun. The total estimated loss came to $946.

Upon his arrest, Montoya provided officers with an air pellet gun—a replica of a .45-caliber semiautomatic handgun—which he said was the weapon used in the crimes. Montoya identified appellant as the driver of the getaway car. Appellant admitted the air gun belonged to him.

---

[3] Because no preliminary hearing took place in this case, we have drawn the facts underlying the charges from the probation officer's report.

4

Appellant and Montoya were charged by information with four counts of second degree robbery (§ 211, counts 1–3, 5) and one count of attempted second degree robbery (§§ 664/211, count 4).

2. *The plea*

At the arraignment on the charges on August 4, 1998, the prosecution offered a plea deal pursuant to which appellant would plead to one count of second degree robbery and receive a maximum sentence of two years in state prison. Appellant accepted the offer.

The prosecutor advised appellant that the maximum term on all the charges was eight years eight months in state prison, but under the plea agreement, appellant "could receive anywhere up to two years in state prison." With respect to the immigration consequences of the conviction, the prosecutor stated: "Also, if you are not a citizen of the United States, your conviction may result in your being deported, denied naturalization or denied readmission if you leave the country." When asked if he understood, appellant answered, "Yes."

Appellant then pleaded no contest to one count of second degree robbery. Appellant's attorney joined in the waivers, concurred in the plea, and stipulated to a factual basis for the plea on appellant's behalf, adding "that this was entered as a result of a plea bargain the maximum two year term and we both believe that it is in the best interest of [appellant] to enter this plea bargain and not necessarily an admission of culpability or liability, that this case is to be controlled by People against West.[4]"

---

**4** *People v. West* (1970) 3 Cal.3d 595.

The trial court found appellant had knowingly, intelligently and effectively waived his constitutional rights, and freely and voluntarily entered into the plea. At the request of defense counsel, sentencing was put over to a later date to give appellant an opportunity to prepare and present factors in mitigation.

*3. Sentencing*

According to the preconviction probation report, appellant was 22 years old at the time of the offenses. He had no prior criminal record and had a stable employment and residential history over the preceding five years. The probation officer noted that these crimes appeared to be out of character for appellant, but nevertheless recommended that probation be denied.

The probation and sentencing hearing took place on August 31, 1998. The court sentenced appellant to state prison for the low term of two years on count 1, and dismissed counts 2 through 5 in furtherance of justice.

*4. The motion to vacate the conviction[5]*

Appellant filed his motion to vacate the conviction pursuant to section 1473.7, subdivision (a)(1) on July 12, 2021. In support of the motion, appellant submitted a declaration signed under penalty of perjury along with several exhibits.

<u>Appellant's declaration</u>

In his declaration appellant averred:

Appellant came to the United States when he was 13 years old and lived in the United States continuously until he was

---

[5] On March 9, 2017, appellant filed a motion to vacate his conviction pursuant to section 1016.5. That motion was withdrawn, and appellant filed a second motion to vacate his conviction under section 1016.5 on August 30, 2018. That motion was ordered off calendar on October 10, 2018.

6

deported in August 2016.  He completed middle school and high school here and was a lawful permanent resident of the United States.  Having grown up in the United States, appellant considered himself an American.

In court proceedings on August 4, 1998, appellant entered a plea of no contest to one count of second degree robbery in *People v. Miguel Lopez*, Los Angeles Superior Court case No. LA030413-02.  Appellant was 22 years old at the time and had no prior experience with the criminal justice system:  He had never been arrested, much less convicted of any crime before.  He had no prior knowledge of the immigration consequences of a conviction.

At the time he entered his plea, appellant was not advised that a conviction for second degree robbery would constitute an aggravated felony under federal immigration law.  Appellant was unaware that as a consequence of this conviction, he would be subject to mandatory deportation and permanently ineligible for lawful permanent residency in the United States.

Although he received a general advisement during the plea proceedings that immigration consequences could occur, appellant incorrectly presumed that he would not suffer any adverse immigration consequences because of his status as a lawful permanent resident.

While appellant was in custody, his family retained attorney David Kwan to represent him.  Appellant believes Mr. Kwan thought appellant was a citizen since he never mentioned anything about adverse immigration consequences stemming from a conviction.  Mr. Kwan never asked appellant about his immigration status, he did not explain the significance to a noncitizen of a conviction for an aggravated felony under

federal immigration law, and he did not tell appellant that he would lose his lawful permanent resident status if he entered a plea to a robbery charge. Instead, the times he met with appellant, Mr. Kwan discussed only the seriousness of appellant's case, how much time he was facing if convicted, and his goal of trying to get jail time and avoid state prison.

Appellant first learned of the mandatory immigration consequences of his conviction when he was deported in August 2016 and consulted with an immigration attorney. At that time, and in August 2018, and again in June 2021, appellant's immigration attorney advised him that he was permanently ineligible for lawful residence in the United States because of his aggravated felony conviction.

Although he was warned at the time of his plea of immigration consequences that could occur, due to his own error and ignorance appellant did not appreciate the seriousness of the charge and the mandatory immigration consequences that would occur by entering a plea. Had he known then that he was bargaining away his lawful resident status, appellant would never have accepted a plea, but instead would have exercised his right to a jury trial to attempt to remain with his family in the United States.

Until he was deported, appellant lived with his mother, whom he supported financially and emotionally. Appellant had steady employment, and his mother relied on appellant's income to pay her mortgage and household expenses. Now these costs are borne by his siblings, which is a great hardship for them. Appellant is very close with his brother and two sisters, as well as his five nieces and his nephew, all of whom are United States citizens.

Appellant has been living in Rosarito, Baja California, Mexico since he was deported. He has no friends or family in Mexico. Appellant has tried to find work as a laborer, maintenance worker, housekeeper, or any available job, but because of his age, the pandemic, and the current economic situation in Mexico, appellant has not been able to secure any employment. He is totally dependent on his family in the United States for financial support. Appellant's former employer (Ability Pathways in Sun Valley, California) has assured him of employment if he is able to regain lawful entry to the United States.

The exhibits

In support of the motion, appellant submitted the following documents:

Exhibit A: The reporter's transcript of the court proceedings during which he entered his no contest plea.

Exhibit B: A letter from the president of Ability Pathways, where appellant had been employed prior to his removal from the United States, stating appellant was a diligent worker and an excellent employee. The company offered to sponsor appellant as an immigrant worker.

Exhibit C: Letters from appellant's mother, two of his siblings, and a niece, attesting to appellant's good character, deep roots in the United States, close ties to his family in the United States, and lack of ties to his home country. Appellant's mother described how she immigrated to Los Angeles in 1985 with five children between the ages of four and twelve after the death of her husband. Appellant became a father figure to his younger siblings and always took care of his mother, whose health and well-being have declined significantly since appellant was

9

deported. Appellant also became a father figure to his young nieces when his brother-in-law died, caring for them to enable his sister to finish nursing school.

Exhibit D: A letter dated August 24, 2016, from the Department of Homeland Security, U.S. Immigration and Customs Enforcement, advising appellant that he is "prohibited from entering, attempting to enter, or being in the United States" at any time because he has been "convicted of a crime designated as an aggravated felony, as defined under section 101(a)(43) of the [Immigration and Nationality] Act."

5. *The hearing and ruling on the motion to vacate*

The hearing on appellant's motion to vacate his conviction took place on September 20, 2021. Appellant did not appear personally because of his removal to Mexico. The trial court decided the motion entirely on the written documents and argument of counsel.

Appellant's counsel argued that he had not been advised of the mandatory immigration consequences that would result from this conviction, and the advisement that a conviction "may result in" certain adverse immigration consequences was insufficient to inform appellant of the actual consequences of mandatory deportation and permanent exclusion from the United States.

The government did not file a written opposition, but argued at the hearing that appellant was adequately advised of his rights and the immigration consequences of his plea, he accepted the plea bargain to avoid "a lot of time in prison," and the People intended that appellant be convicted of a felony. The

10

court stated that the plea and sentencing[6] transcripts contained no indication the prosecutor was willing to offer anything less than a two-year prison term.  The court also declared it found no contemporaneous objective evidence corroborating appellant's assertions.  Appellant's attorney argued that such evidence could be found in appellant's deep ties to the United States and his status as a lawful permanent resident at the time of his plea.

The trial court denied the motion, finding insufficient objective evidence that appellant would have rejected the plea had he understood the true immigration consequences, and failing to see any alternative disposition that could have been negotiated.

## DISCUSSION

### I. Applicable Law

#### A. *Section 1473.7*

Section 1473.7 authorizes a defendant who is no longer in criminal custody to file motion to vacate a conviction or sentence where "[t]he conviction or sentence is legally invalid due to prejudicial error damaging the moving party's ability to meaningfully understand, defend against, or knowingly accept the actual or potential adverse immigration consequences of a conviction or sentence."  (§ 1473.7, subd. (a)(1); *People v. Manzanilla* (2022) 80 Cal.App.5th 891, 904 (*Manzanilla*).)  Effective January 2019, the legislation was amended to provide that "[a] finding of legal invalidity may, but need not, include a finding of ineffective assistance of counsel."  (§ 1473.7, subd. (a)(1), as amended by Stats. 2018, ch. 825, § 2; *People v. Mejia*

---

[6] No sentencing transcript is included in the record on appeal.

(2019) 36 Cal.App.5th 859, 862 (*Mejia*).) Thus, although the motion to vacate is fundamentally based on errors by counsel, the moving party need not demonstrate that "counsel's representation fell below an objective standard of reasonableness" "under prevailing professional norms." (*Strickland v. Washington* (1984) 466 U.S. 668, 688; *People v. Camacho* (2019) 32 Cal.App.5th 998, 1008 (*Camacho*).)

Section 1473.7 requires a court to "vacate a conviction or sentence upon a showing, by a preponderance of the evidence, of 'prejudicial error damaging the moving party's ability to meaningfully understand, defend against, or knowingly accept the actual or potential adverse immigration consequences of a plea of guilty or nolo contendere.' (§ 1473.7, subds. (e)(1), (a)(1).) . . . If the motion is meritorious, 'the court shall allow the moving party to withdraw the plea.' (*Id.*, subd. (e)(3).)" (*Vivar, supra*, 11 Cal.5th at p. 523.)

## B. *Federal immigration law*

A person convicted of an "aggravated felony" is subject to mandatory deportation and permanent exclusion from the United States. (8 U.S.C. § 1227(a)(2)(A)(iii) ["Any alien who is convicted of an aggravated felony at any time after admission is deportable"]; 8 U.S.C. § 1228(c) ["An alien convicted of an aggravated felony shall be conclusively presumed to be deportable from the United States"]; *United States v. Palomar-Santiago* (2021) ___U.S.___ [141 S.Ct. 1615, 1619, 209 L.Ed.2d 703, 707]; *Moncrieffe v. Holder* (2013) 569 U.S. 184, 187 [185 L.Ed.2d 727, 133 S.Ct. 1678 [a noncitizen convicted of a crime classified as an " 'aggravated felony' " is not only deportable, but also ineligible for discretionary forms of relief].)

12

Aggravated felonies include "crime[s] of violence . . . for which the term of imprisonment [is] at least one year" (8 U.S.C. § 1101(a)(43)(F)), and any "theft offense (including receipt of stolen property) or burglary offense for which the term of imprisonment [is] at least one year" (8 U.S.C. § 1101(a)(43)(G)). The term "crime of violence" includes "an offense that has as an element the use, attempted use, or threatened use of physical force against the person or property of another, or [¶] . . . any other offense that is a felony and that, by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense." (18 U.S.C. § 16(a) & (b).)

Under these definitions, robbery is an aggravated felony under United States immigration law, conviction of which subjects a noncitizen to mandatory removal from the United States. (8 U.S.C. § 1227(a)(2)(A)(iii); 8 U.S.C. § 1228(c).)

**C. *Standard of review for section 1473.7 motion proceedings***

Our Supreme Court has endorsed the independent standard of appellate review for section 1473.7 motion proceedings. (*Vivar*, *supra*, 11 Cal.5th at pp. 524–528.) As the high court explained, " '[U]nder independent review, an appellate court exercises its independent judgment to determine whether the facts satisfy the rule of law.' [Citation.] When courts engage in independent review, they should be mindful that ' "[i]ndependent review is *not* the equivalent of de novo review . . . ." ' [Citation.] An appellate court may not simply second-guess factual findings that are based on the trial court's own observations." (*Id*. at p. 527.) The court continued, "Where, as here, the facts derive entirely from written declarations and other

13

documents, however, there is no reason to conclude the trial court has the same special purchase on the question at issue; as a practical matter, '[t]he trial court and this court are in the same position in interpreting written declarations' when reviewing a cold record in a section 1473.7 proceeding. [Citation.] Ultimately it is for the appellate court to decide, based on its independent judgment, whether the facts establish prejudice under section 1473.7." (*Id*. at p. 528.)

## II. Appellant Demonstrated Error Under Section 1473.7, Subdivision (a)(1)

### A. *Timeliness.*

Interspersed throughout the respondent's brief are reminders that appellant's motion to vacate was heard 23 years after his conviction in this case and five years after he was ordered removed from the country by federal immigration authorities. By repeatedly mentioning this fact, respondent seems to suggest that the motion to vacate was not timely filed, and because appellant failed to exercise due diligence, his assertions lack credibility. We decline respondent's invitation to discount appellant's claims based on the passage of time since his conviction.

Section 1473.7 does not define timeliness by comparing the passage of time between the moving party's plea and filing the motion to vacate. (See, e.g., *People v. Perez* (2021) 67 Cal.App.5th 1008, 1015–1016; *People v. Ruiz* (2020) 49 Cal.App.5th 1061, 1063 (*Ruiz*).) Further, any issue regarding the timeliness of the motion and appellant's due diligence in filing it was forfeited by the People's failure to raise it below. The People did not oppose the motion for lack of timeliness, nor did the issue come up at the hearing on the motion. Although a trial court may, in its

14

discretion, determine a section 1473.7 motion is untimely if the court has found the moving party failed to act with reasonable diligence, the superior court here made no such finding or determination about appellant's diligence or the timeliness of the motion. (*Perez*, at p. 1016.)

In any event, and contrary to respondent's suggestion, the 23-year gap between appellant's conviction and his motion to vacate under section 1473.7 does not diminish the credibility of appellant's declaration in support of the motion. Although appellant's 1998 conviction subjected him to mandatory removal and permanent exclusion from the United States, appellant did not suffer those inevitable immigration consequences until 2016 when he was actually deported. At that point, the record shows appellant promptly undertook to withdraw his plea and vacate his conviction pursuant to section 1016.5 on the ground that he had not known or understood the adverse immigration consequences of his plea, and he would not have entered the plea bargain had he known he would be deported as a result.

**B. *Appellant presented facts sufficient to demonstrate he did not understand his plea and conviction would subject him to mandatory removal, thereby establishing error in entering the plea***

The advisement that appellant *may* face certain adverse immigration consequences was insufficient to inform appellant that the conviction would subject him to mandatory deportation and permanent exclusion from the United States. As our Supreme Court has explained, there is a stark difference between an actual and a theoretical risk of deportation:

"A defendant entering a guilty plea may be aware that some criminal convictions may have immigration consequences

15

as a general matter, and yet be unaware that a conviction for a specific charged offense will render the defendant subject to mandatory removal.  Thus, as we have previously noted in a different context, the standard section 1016.5 advisement that a criminal conviction 'may' have adverse immigration consequences 'cannot be taken as placing [the defendant] on notice that, owing to his particular circumstances, he faces an actual risk of suffering such.' [Citation.]  And for many noncitizen defendants deciding whether to plead guilty, the 'actual risk' that the conviction will lead to deportation—as opposed to general awareness that a criminal conviction 'may' have adverse immigration consequences—will undoubtedly be a 'material matter[]' that may factor heavily in the decision whether to plead guilty.  (*Giron, supra*, 11 Cal.3d at p. 797; cf. *INS v. St. Cyr* (2001) 533 U.S. 289, 325 [150 L. Ed. 2d 347, 121 S. Ct. 2271] [for noncitizens, '[t]here is a clear difference . . . between facing possible deportation and facing certain deportation']; *U.S. v. Rodriguez-Vega* (9th Cir. 2015) 797 F.3d 781, 790 ['Warning of the possibility of a dire consequence is no substitute for warning of its virtual certainty.  As Judge Robert L. Hinkle explained, "Well, I know every time that I get on an airplane that it could crash, but if you tell me it's going to crash, I'm not getting on." '].)"  (*People v. Patterson* (2017) 2 Cal.5th 885, 895–896; *Manzanilla, supra*, 80 Cal.App.5th at pp. 905–906; *Ruiz, supra*, 49 Cal.App.5th at p. 1065.)

Indeed, "[w]here immigration law is ' "succinct, clear, and explicit" that the conviction renders removal virtually certain, counsel must advise his client that removal is a virtual certainty.' [Citations.]  Immigration law is clear that removal is 'virtually certain' when 'the immigration statute or controlling case law

expressly identifies the crime of conviction as a ground for removal,'" as in the instant case. (*Manzanilla, supra*, 80 Cal.App.5th at p. 905.)

Here, appellant's declaration explains a reasonable basis for his erroneous belief that he would not be subject to adverse immigration consequences: In the absence of any advice from counsel, appellant incorrectly assumed that his status as a lawful permanent resident of the United States shielded him from any *possible* adverse immigration consequences mentioned by the prosecutor at his plea hearing. At the time of his plea, appellant was only 22 years old and had no previous encounters with the criminal justice system during which he might have received legal advice about the immigration consequences of a conviction. Appellant's lawyer never asked about his immigration status, nor did he mention that a conviction for robbery constitutes an aggravated felony under federal immigration law which would subject appellant to mandatory deportation. The record also reveals no effort by appellant's attorney to negotiate a plea that would not carry such dire immigration consequences.

The People have not raised any evidentiary objections to the statements in appellant's declaration, and the facts set forth in support of the motion to vacate are uncontroverted. This uncontroverted evidence was sufficient to establish appellant's error in entering the plea. As in *Camacho*, where the defendant's declaration and testimony established facts showing not just counsel error, but also defendant's ignorance and his own error in believing that the terms of the negotiated plea would allow him to avoid adverse immigration consequences, we conclude appellant has demonstrated that errors damaged his "ability to meaningfully understand, defend against, or knowingly accept

17

the actual or potential adverse immigration consequences of [his] plea of . . . nolo contendere." (§ 1473.7, subd. (a)(1); *Camacho*, *supra*, 32 Cal.App.5th at p. 1009; see also *Mejia*, *supra*, 36 Cal.App.5th at p. 871 ["focus of the inquiry in a section 1473.7 motion is on the '*defendant's own error* in . . . not knowing that his plea would subject him to mandatory deportation and permanent exclusion from the United States' "]; *People v. Perez* (2018) 19 Cal.App.5th 818, 828 (*Perez*) [§ 1473.7 allows defendant to challenge guilty plea based on mistake of law regarding adverse immigration consequences of the plea].)

## III. Appellant Established Prejudicial Error

A person seeking to withdraw a plea under section 1473.7 must not only show an error "damaging the moving party's ability to meaningfully understand, defend against, or knowingly accept the actual or potential adverse immigration consequences" of the plea (§ 1473.7, subd. (a)(1)), "[t]he error must also be 'prejudicial' " (*Vivar*, *supra*, 11 Cal.5th at p. 528). Prejudicial error may result from "the moving party's *own* mistake of law or inability to understand the potential adverse immigration consequences of the plea." (*People v. Jung* (2020) 59 Cal.App.5th 842, 856, overruled on other grounds in *Vivar*, *supra*, 11 Cal.5th at p. 526, fn. 4; *People v. Rodriguez*, *supra*, 60 Cal.App.5th at p. 1006; *Perez*, *supra*, 19 Cal.App.5th at p. 828.) At the heart of the prejudicial error analysis "is the mindset of the defendant and what he or she understood—or didn't understand—at the time the plea was taken." (*Mejia*, *supra*, 36 Cal.App.5th at p. 866; see *Martinez, supra,* 57 Cal.4th at p. 564 ["the test for prejudice considers what the defendant would have done, not what the effect of that decision would have been"].)

18

Our Supreme Court has declared that "showing prejudicial error under section 1473.7, subdivision (a)(1) means demonstrating a reasonable probability that the defendant would have rejected the plea if the defendant had correctly understood its actual or potential immigration consequences." (*Vivar*, *supra*, 11 Cal.5th at p. 529; *Manzanilla*, *supra*, 80 Cal.App.5th at p. 904 ["To establish prejudice, a defendant must show by a preponderance of the evidence that he would not have entered the plea had he known about the immigration consequences"]; *Mejia*, *supra*, 36 Cal.App.5th at p. 862 [moving party must establish by a preponderance of the evidence that "had he understood the consequences, it is reasonably probable he would have instead attempted to 'defend against' the charges"]; *Rodriguez*, *supra*, 60 Cal.App.5th at p. 1003.)

" 'A "reasonable probability" "does not mean more likely than not, but merely a reasonable chance, more than an abstract possibility." ' " (*People v. Soto* (2022) 79 Cal.App.5th 602, 610 (*Soto*); *People v. Rodriguez* (2021) 68 Cal.App.5th 301, 324.) "When courts assess whether a petitioner has shown that reasonable probability, they consider the totality of the circumstances. [Citation.] Factors particularly relevant to this inquiry include the defendant's ties to the United States, the importance the defendant placed on avoiding deportation, the defendant's priorities in seeking a plea bargain, and whether the defendant had reason to believe an immigration-neutral negotiated disposition was possible." (*Vivar*, *supra*, 11 Cal.5th at pp. 529–530.)

Other factors courts may consider in determining the reasonable probability that the defendant would have rejected the plea because of immigration consequences include: the

19

defendant's remaining ties or lack thereof to his or her home country (*Manzanilla*, *supra*, 80 Cal.App.5th at p. 912; *Mejia*, *supra*, 36 Cal.App.5th at p. 872), the defendant's immigration status in the United States at the time of the plea (*People v. Ogunmowo* (2018) 23 Cal.App.5th 67, 80–81; *People v. Espinoza* (2018) 27 Cal.App.5th 908, 917), the defendant's criminal history (*Camacho*, *supra*, 32 Cal.App.5th at p. 1011; *Mejia*, at p. 873; *People v. Bravo* (2021) 69 Cal.App.5th 1063, 1073–1074, review granted Dec. 15, 2021, S271782), and the defendant's employment history (*Soto*, *supra*, 79 Cal.App.5th at p. 611).  And while the probability of obtaining a more favorable result at trial may be one factor a court considers in determining prejudice, it is not controlling or necessarily even the most important factor courts consider.  (*Martinez*, *supra*, 57 Cal.4th at p. 559; *Ogunmowo*, at p. 78.)  Indeed, the United States Supreme Court has declared that where avoiding deportation was *the* deciding factor for a defendant, there is a reasonable probability that such a defendant "would have rejected any plea leading to deportation—even if it shaved off prison time—in favor of throwing a 'Hail Mary' at trial." (*Lee*, *supra*, 137 S.Ct. at p. 1967.)

It is not enough, however, for a defendant simply to declare that she would not have accepted any plea that would result in deportation.  As our Supreme Court has observed, "when a defendant seeks to withdraw a plea based on inadequate advisement of immigration consequences, [courts] have long required the defendant corroborate such assertions with ' "objective evidence." ' " (*Vivar*, *supra*, 11 Cal.5th at p. 530; *People v. Alatorre* (2021) 70 Cal.App.5th 747, 770; *Mejia*, *supra*, 36 Cal.App.5th at p. 872 ["courts should not simply accept a

defendant's statement of regret regarding the plea, courts should also 'look to contemporaneous evidence to substantiate a defendant's expressed preferences' "].)

Appellant has met that requirement here.[7]

Appellant's declaration in support of the motion to vacate contains a detailed account of his strong ties to the United States, which is corroborated by the letters from his family and his former employer. When he was 13 years old, appellant was brought to Los Angeles along with his four siblings by his mother after the death of his father. He became a father figure and assumed responsibility for his younger siblings as the close-knit family established itself in its new home. Even as a teenager, appellant helped to support his mother and continued to do so until he was deported in 2016.

Appellant completed middle school and high school in Los Angeles. During those years he became a lawful permanent resident of the United States, and considered himself to be an American. Everyone in his family is now a United States citizen.

When appellant accepted a plea—unaware of the dire immigration consequences it carried—he was young and inexperienced, and had had no prior contact with the criminal

---

[7] The California Supreme Court is currently considering the standard for determining the sufficiency of corroborating evidence necessary to sustain a defendant's claim of prejudicial error under section 1473.7, subdivision (a)(1). (*People v. Espinoza*, review granted Sept. 15, 2021, S269647 ["Did the Court of Appeal err in ruling that defendant failed to adequately corroborate his claim that immigration consequences were a paramount concern and thus that he could not demonstrate prejudice within the meaning of Penal Code section 1473.7?"].)

justice system. Without the benefit of advice from his lawyer about the mandatory immigration consequences of a conviction for an aggravated felony under federal immigration law, appellant mistakenly assumed that his lawful permanent resident status would shield him from the possible immigration consequences mentioned at the plea hearing. And when appellant eventually learned of his error and was deported in 2016, he promptly sought relief under section 1016.5.[8]

In contrast to his strong ties to the United States, appellant has no ties to Mexico. He has suffered from the lack of family, friends and employment since he was deported in 2016, and his absence has caused considerable hardship for his family.

The evidence submitted in support of appellant's 1473.7 motion was undisputed[9] and the trial court made no credibility findings. Respondent nevertheless argues "there was nothing to corroborate appellant's self-serving declaration," and "[n]othing in the record shows that appellant at the time of his plea had any concern or question about the immigration consequences or sought the advice of an immigration attorney." Indeed, according to respondent, appellant's silence during and after the section 1016.5 advisement—that a conviction *may* result in deportation or other adverse immigration consequences—suggests "the

---

[8] That the mandatory immigration consequences of appellant's conviction did not come to pass until 18 years after his plea is irrelevant to whether appellant established prejudicial error under section 1473.7.

[9] In response to the motion, the People filed no written opposition, made no objection to any of the evidence presented, and argued only that the immigration advisement appellant received negated appellant's claim of prejudicial error.

22

immigration consequences of a conviction were not of a primary or motivating concern" to appellant.

However, courts, including the California Supreme Court, have held that an immigration advisement warning only that a conviction *may* carry certain adverse immigration consequences is wholly inadequate to inform the defendant that he or she *will be* deported, permanently excluded, and denied naturalization as a *mandatory* consequence of that conviction. (*Vivar, supra*, 11 Cal.5th at p. 521 ["To warn merely ' "that his plea might have immigration consequences," ' in circumstances where the consequences were 'certain,' was 'constitutionally deficient' "]; *People v. Patterson, supra*, 2 Cal.5th at pp. 889, 895–896; *People v. Superior Court* (*Zamudio*) (2000) 23 Cal.4th 183, 204 ["advising a defendant that a no contest plea may in the abstract have immigration consequences, cannot be taken as placing him on notice that, owing to his particular circumstances, he faces an actual risk of suffering such"]; *Manzanilla, supra*, 80 Cal.App.5th at p. 906; *Soto, supra*, 79 Cal.App.5th at p. 609; *Ruiz, supra*, 49 Cal.App.5th at p. 1065; *Espinoza, supra*, 27 Cal.App.5th at p. 916.)

Appellant also presented a reasonable explanation for his silence when told of *possible* immigration consequences:  He erroneously assumed his lawful permanent resident status would shield him from any immigration penalties, and he believed his attorney thought he was a citizen.

In this regard, respondent's reliance on *People v. Diaz* (2022) 76 Cal.App.5th 102, review granted June 15, 2022, S274129 (*Diaz*) is misplaced.  Diaz was convicted following a no contest plea to one count of robbery in 1989.  (*Id*. at pp. 104–105.) In *Diaz*, the appellate court affirmed the denial of Diaz's section

23

1473.7 motion, agreeing with the trial court's assessment that Diaz's declarations were self-serving and not credible. (*Id*. at p. 114.) Diaz, who unlike appellant, was quite familiar with the criminal justice system (*id*. at p. 116), was "aggressive in his self-advocacy at the plea hearing. He asked multiple questions, spoke directly to the court several times, and attempted to bargain directly with the court as well. Diaz persevered in his efforts to obtain what he wanted, whether it was the significant benefit of a lesser sentence or the return of $17." (*Id*. at p. 115.) The court declared it was "simply not believable that Diaz, who was belligerent and persistent in his pursuit of something as insignificant as the return of the $17 he had in his wallet when he was arrested, would not have asked any questions or sought a resolution that would preserve his immigration status if he believed that it was possible to do so. The circumstances indicate that this was very likely an unattainable goal, and that Diaz knew it was." (*Id*. at p. 116.) While noting "there was contemporaneous objective evidence in [Diaz's] favor," the court found it insufficient to meet his burden when weighed against the "very strong evidence that Diaz made an informed decision to accept the plea bargain that he was offered." (*Id*. at p. 115.)

The appellate court also noted that at the time of his plea, Diaz had temporary resident status which he knew would soon expire. He had an upcoming appointment to obtain permanent resident status that he would necessarily miss if he accepted the plea and were incarcerated. Thus, even if Diaz believed his temporary legal status would protect him from being deported, he knew that legal status would expire, he would be unable to reestablish it, and he would no longer be in the country legally. In short, "[i]f [Diaz] believed his fate relied on his legal status, he

24

would have understood that if he made the plea he would not be in the country legally after his temporary resident status expired and that he would potentially be subject to adverse immigration consequences." (*Diaz*, *supra*, 76 Cal.App.5th at p. 114.) Nevertheless, and despite his aggressive self-advocacy on other matters, Diaz had no comment or questions when the district attorney advised him of the potential immigration dangers presented by the plea and conviction. (*Id.* at p. 116.)

Diaz was not deported after he served his sentence. (Immigration officials advised him he would not be deported because he had been in the United States since childhood.) (*Diaz*, *supra*, 76 Cal.App.5th at p. 108.) Following his release, Diaz committed other crimes, including felony driving under the influence, another deportable offense. He was again advised that he would not be deported. (*Ibid.*) Diaz was finally deported because of the robbery conviction in 2013, but illegally reentered the United States within six months. (*Ibid.*) When Diaz filed his section 1473.7 motion in 2020, he was again facing imminent deportation. (*Ibid.*)

The circumstances of appellant's plea and overall credibility could not be more different. In contrast to Diaz, appellant had no prior criminal history and no familiarity with the criminal justice system at the time of his plea. His interactions with the court during the plea colloquy, which were limited to responding to direct questions, were respectful and succinct. When appellant entered his plea, he was a lawful permanent resident and mistakenly believed that status would protect him from the potential immigration consequences of a conviction. But unlike Diaz, who knew his conviction would cause him to lose his legal status, appellant had no reason to

25

question that assumption until many years after his plea when he was deported. Finally, appellant's clean record after his conviction stands in stark contrast to Diaz, who committed other crimes and another deportable offense before being deported for the robbery conviction.

Respondent further challenges appellant's showing of prejudicial error on the ground that he failed to present the declaration of an immigration expert or his defense counsel, David Kwan, to corroborate his claims. Not only does it appear that Mr. Kwan died long before appellant had any reason to inquire about his recollections of appellant's plea,[10] but a moving party is not required to provide the declaration of plea counsel in support of a section 1473.7 motion. (*Manzanilla*, *supra*, 80 Cal.App.5th at p. 909 ["requiring an admission from defense counsel or expert testimony . . . would impose a condition on obtaining relief under section 1473.7 that is not contained in the statute. The court can certainly consider what evidence is or is

---

[10] Pursuant to appellant's request, we take judicial notice of the entry on the California State Bar Web site (<https://apps.calbar.ca.gov/attorney/LicenseeSearch/QuickSearch?FreeText=David%20Kwan> [as of Sept. 13, 2022], archived at <https://perma.cc/RH8Z-GG3B>), which shows that the only attorney named David Kwan in California was admitted to the State Bar in 1952 and is now deceased. (Evid. Code, § 452, subd. (h); *People v. Vigil* (2008) 169 Cal.App.4th 8, 12, fn. 2.) We also take judicial notice of the obituary posted on the Los Angeles Times Web site, which states that David Waihan Kwan was admitted to the State Bar of California in 1952 and died on January 25, 2011 (<https://www.legacy.com/us/obituaries/latimes/name/david-kwan-obituary?id=20993859> [as of Sept. 13, 2022], archived at <https://perma.cc/3C3K-TSBC>).

not in the record, but there is no litmus test requiring that the original defense counsel agrees they failed to adequately negotiate on behalf of their client"].)

Respondent also contends that appellant has failed to demonstrate "there was an alternative immigration-safe disposition that was necessarily available to him that would have been offered by the People and accepted by the court." In the next sentence, respondent dismisses the proposed alternative dispositions identified by appellant as "fanciful speculation." In any event, the Attorney General places far more weight on whether an immigration-neutral disposition would have been offered by the prosecutor and accepted by the trial court than this factor deserves in the court's consideration of the "totality of circumstances." (*Vivar*, *supra*, 11 Cal.5th at p. 529.)

As our Supreme Court has explained, a defendant's decision to reject a plea bargain " 'might be based either on the desire to go to trial or on the hope or expectation of negotiating a different bargain without immigration consequences.' [Citation.] When a court weighs whether a defendant would have taken the latter path, it need not decide whether the prosecution would actually 'have offered a different bargain'—rather, the court should consider 'evidence that would have caused *the defendant* to expect or hope a different bargain would or could have been negotiated.' " (*Vivar*, *supra*, 11 Cal.5th at p. 529, quoting *Martinez*, *supra*, 57 Cal.4th at p. 567.)

Here, we conclude that appellant's personal history, deep ties to the United States, and at the time of his plea, his youth and lack of experience with the criminal justice and immigration systems sufficiently corroborate appellant's claim that his ability to remain in the United States with his family was a paramount

concern.  In the absence of any legal advice about the dire immigration consequences that would follow from his plea and conviction, appellant accepted a plea to an aggravated felony in the mistaken belief that the warning about possible adverse immigration consequences did not apply to him because of his lawful permanent resident status.

Applying our independent judgment, and viewing the totality of the circumstances, we conclude it is reasonably probable appellant would have rejected the plea had he correctly understood its actual immigration consequences.  Appellant has carried his burden of establishing prejudicial error and is entitled to relief.

## DISPOSITION

The order denying appellant's motion to withdraw his plea and vacate his conviction under Penal Code section 1473.7 is reversed.  The matter is remanded to the superior court with directions to grant the motion and vacate the conviction.

CERTIFIED FOR PUBLICATION.


LUI, P. J.

We concur:


CHAVEZ, J.


HOFFSTADT, J.