**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. 23-3532 |
| *Plaintiff - Appellee*, | D.C. No. 3:23-cr-00202-TWR-1 |
| v. | |
| HIGINIO ALEJANDRO GONZALEZ-REYES, | OPINION |
| *Defendant - Appellant*. | |

Appeal from the United States District Court
for the Southern District of California
Todd W. Robinson, District Judge, Presiding

Argued and Submitted November 18, 2025
Pasadena, California

Filed April 15, 2026

Before: Jay S. Bybee, Kenneth K. Lee, and Ana de Alba,
Circuit Judges.

Opinion by Judge Lee;
Dissent by Judge de Alba

**SUMMARY**[*]

**Criminal Law**

The panel affirmed the district court's denial of Higinio Gonzalez-Reyes' motion to dismiss a criminal charge under 8 U.S.C. § 1326, which bars previously removed aliens from reentering the United States.

Gonzalez-Reyes claimed that his state conviction for rape under California Penal Code § 261(a)(2)—which was the predicate act for his removal—is not an aggravated felony under the Immigration and Nationality Act, and that because he was allegedly wrongfully removed, he cannot be charged with criminal reentry.

The panel held that even if Gonzalez-Reyes satisfied the first two prongs of the collateral attack provisions of 8 U.S.C. § 1326(d) (exhaustion and deprivation of review), he did not meet his burden to prove that his removal was "fundamentally unfair" under the third prong.

The panel assumed for the categorical approach analysis that Section 261(a)(2) criminalizes rape committed through non-physical deprivation of consent, and held that the generic federal definition of rape, which encompasses rape by non-physical duress, is a categorical match with Section 261(a)(2). That means Gonzalez-Reyes' state rape conviction is a valid predicate offense to qualify him as an aggravated felon under federal law. Because Gonzalez-Reyes was convicted of an aggravated felony, he cannot

---

[*] This summary constitutes no part of the opinion of the court.  It has been prepared by court staff for the convenience of the reader.

show "fundamental unfairness" under 8 U.S.C. § 1326(d)(3), and his collateral attack on his order of removal fails.

Dissenting, Judge de Alba disagreed with the majority's holding that the generic federal definition of rape includes rape by non-physical threats. She wrote that Cal. Penal Code § 261(a)(2) is not a categorical match to its federal analogue, rendering Gonzalez-Reyes' predicate removal order "fundamentally unfair" under Section 1326(d)(3). Because Gonzalez-Reyes also satisfies the procedural requirements in Sections 1326(d)(1) and (d)(2), she would reverse the denial of his motion to dismiss the indictment.

## COUNSEL

Andrew Y. Chiang (argued) and Julie A. Bauman, Assistant United States Attorneys; Daniel E. Zipp, Assistant United States Attorney, Chief, Appellate Section, Criminal Division; Adam Gordon, United States Attorney; Office of the United States Attorney, United States Department of Justice, San Diego, California; for Plaintiff-Appellee.

Lynette M. Belsky (argued), Assistant Federal Public Defender, Federal Defenders of San Diego Inc., San Diego, California, for Defendant-Appellant.

# OPINION

LEE, Circuit Judge:

Angry that his girlfriend might end their relationship, Higinio Gonzalez-Reyes strangled and raped her in view of her two young children. A jury convicted him of rape, false imprisonment by menace or violence, and domestic battery with corporal injury under the California Penal Code. After serving his prison term, he was removed to Mexico under an immigration statutory provision that allows expedited removals of aggravated felons unlawfully residing in the United States. Within three days of his removal, Gonzales-Reyes made his way back to the United States but was arrested near the border. He was criminally charged under 8 U.S.C. § 1326, which bars previously removed aliens from reentering the United States.

Gonzalez-Reyes now collaterally challenges his criminal case, contending that his earlier expedited removal was invalid. He claims that his state conviction for rape—which was the predicate act for his removal—is not an aggravated felony under the federal immigration statute. And because he was allegedly wrongfully removed, Gonzales-Reyes argues that he cannot be charged with criminal reentry. He is wrong. He was rightly removed from our country: California's statutory definition of rape is a categorical match with the generic federal definition of rape, and thus his state conviction qualifies as an aggravated felony.

We affirm the district court's denial of Gonzalez-Reyes' motion to dismiss his criminal charge of illegal reentry.

## BACKGROUND

### I. Gonzalez-Reyes sexually assaults his girlfriend and is convicted of multiple violent crimes under California law.

In 2015, law enforcement responded to a 911 call from an apartment in Huntington Beach, California. The caller reported that she had escaped from the bedroom of her apartment where she lived with her boyfriend, Higinio Gonzalez-Reyes.

The couple were arguing in the kitchen when Gonzalez-Reyes grabbed her hair and dragged her to the bedroom. He shoved her repeatedly and strangled her. When she tried to leave, Gonzalez-Reyes blocked the doorway and pushed her onto the bed.

She screamed for help, but Gonzalez-Reyes held down her wrists, stripped off her clothing, and sexually penetrated her. She repeatedly told him to stop, but Gonzalez-Reyes continued and demanded the victim call her boss to tell him she would be unable to attend work. When she refused, Gonzalez-Reyes penetrated her with greater force, causing her to cry out in pain.

When she tried to push him away, Gonzalez-Reyes threatened further injury if she continued resisting. When Gonzalez-Reyes left the room momentarily, the victim called 911. After police arrived, officers interviewed her two children, only five and eight years old. The children told police they heard the argument and saw Gonzalez-Reyes on the bed in a "push-up exercise position."

With little prodding from the police officers, Gonzalez-Reyes confessed to what he did. He told them that after his girlfriend suggested she would end the relationship, he

grabbed her by the neck "out of anger." He said he strangled her for a sustained period, blocked the doorway, pulled her onto the bed when she tried to leave, removed her clothing, and then sexually penetrated her as she resisted.

In 2018, a jury found Gonzalez-Reyes guilty of three violations of the California Penal Code: forcible rape under Cal. Penal Code § 261(a)(2), false imprisonment by menace, violence, fraud, or deceit under Cal. Penal Code §§ 236, 237.5, and corporal injury on a spouse or cohabitant under Cal. Penal Code § 273.5(a). He was sentenced to six years in state prison for the rape conviction, and the other convictions were stayed.

## II. Gonzalez-Reyes is removed from the United States but reenters illegally days later.

Before he was released from state prison, federal immigration authorities served Gonzalez-Reyes—a Mexican national who entered the United States unlawfully in his twenties—with a Notice of Intent to Issue a Final Removal Order. The Notice stated that the U.S. Department of Homeland Security (DHS) had deemed him deportable based on his state rape conviction—an aggravated felony as defined by 8 U.S.C. § 101(a)(43)(A). Gonzalez-Reyes waived his right to appeal, conceding removability. Immigration authorities then served Gonzalez-Reyes with the Final Administrative Order of Removal and removed him from the United States.

Within days, he illegally reentered the United States. Gonzalez-Reyes was arrested and charged with illegal reentry of a removed alien in violation of 8 U.S.C. § 1326(a), (b). Gonzalez-Reyes unsuccessfully moved to dismiss the criminal charge of illegal reentry under the collateral attack provisions of 8 U.S.C. § 1326(d). He then conditionally pled

guilty but preserved his right to challenge the district court's denial of his motion to dismiss his criminal case. Now on appeal, Gonzalez-Reyes argues his earlier removal was improper because his state conviction for rape is allegedly not an aggravated felony under the expedited removal statute. We disagree.

## STANDARD OF REVIEW

This court reviews de novo the denial of a motion to dismiss a criminal charge under 8 U.S.C. § 1326(d). *United States v. Aguilera-Rios*, 769 F.3d 626, 629 (9th Cir. 2014).

## DISCUSSION

### A. A collateral challenge to an illegal reentry charge must meet all three prongs of Section 1326(d).

Under the Immigration and Nationality Act (INA), "[a]ny alien who is convicted of an aggravated felony at any time of admission is deportable." 8 U.S.C. § 1227(a)(2)(A)(iii). Aggravated felonies under the INA include, among other offenses, "rape." *See* 8 U.S.C. § 1101(a)(43)(F). A nonresident alien who is convicted of an aggravated felony within the meaning of the INA may be removed via "expedited" proceedings—*i.e.*, without a hearing before an immigration judge. 8 U.S.C. § 1228(b)(1), (2).

Once an alien has been validly removed from the United States, it is a crime to reenter the country without authorization. 8 U.S.C. § 1326(a). To contest his conviction for illegal reentry, an alien may mount a collateral attack on the predicate removal order underlying his conviction. 8 U.S.C. § 1326(d). But he must satisfy three statutory requirements, showing that "(1) the alien exhausted any administrative remedies that may have been available to seek

relief against the order; (2) the deportation proceedings at which the order was issued improperly deprived the alien of the opportunity for judicial review; and (3) the entry of the order was fundamentally unfair." *Id.* As the Supreme Court has made clear, if an alien cannot meet each of these three statutory requirements, his collateral attack fails. *See United States v. Palomar Santiago*, 593 U.S. 321, 329 (2021).

Even assuming Gonzalez-Reyes has satisfied the first two prongs of Section 1326(d) (exhaustion and deprivation of judicial review), he has not met his burden to prove his removal was "fundamentally unfair" under the third prong of Section 1326(d). As explained below, his removal was not "fundamentally unfair" because he was rightfully removed as an aggravated felon based on his state rape conviction.

**B. Because Gonzalez-Reyes' rape conviction qualifies as an "aggravated felony," he cannot show his predicate removal was "fundamentally unfair" as required by Section 1326(d)(3).**

Gonzales-Reyes' illegal reentry conviction hinges on a removal order that was predicated on a state conviction. And when the United States prosecutes a defendant under a federal criminal statute that relies on a state conviction as a predicate offense, the state's definition of the crime must fit within the generic federal definition of the corresponding offense. *See Moncrieffe v. Holder*, 569 U.S. 184, 190 (2013).

To determine whether a state conviction can qualify as an "aggravated felony" under the INA, the court employs the so-called "categorical approach" established in *Taylor v. United States*, 495 U.S. 575 (1990). *Id.* "Under this approach[,] we look not to the facts of the particular prior

case, but instead to whether the state statute defining the crime of conviction categorically fits within the generic federal definition of a corresponding aggravated felony." *Id.* (internal quotation and citation omitted).

The categorical approach involves three steps. First, we determine the least of the acts that would be criminalized by the state statute. *See Valdez v. Garland*, 28 F.4th 72, 79 (9th Cir. 2022). This first step is not an exercise of pure "legal imagination." *Gonzalez v. Duenas-Alvarez*, 549 U.S. 183, 193 (2007). To establish the least of a statute's criminalized acts, he "must at least point to his own case or other cases in which the state courts in fact did apply the statute in the special (nongeneric manner) for which he argues." *Id.* Second, we determine the generic federal definition of the offense. *Valdez*, 28 F.4th at 79. Third, and finally, we ask whether the least of the acts criminalized by the state fit within the federal understanding of the corresponding offense. *See Duenas-Alvarez*, 549 U.S. at 193. If the "least of the criminalized acts" do not fit within the federal understanding of the corresponding offense, and there is a realistic probability the state would apply its statute to conduct outside the generic federal definition, the conviction may not serve as the predicate offense for the federal statute. *See id.*

1. <u>Section 261(a)(2) of California's rape statute arguably criminalizes rape through non-physical coercion.</u>

California case law suggests rape, as defined in Cal. Penal Code § 261(a)(2), includes rape perpetrated by means other than bodily harm or direct threat of bodily harm.

Under Section 261(a)(2), "[r]ape is an act of sexual intercourse accomplished . . . against a person's will by

means of force, violence, *duress*, menace, *or* fear of immediate and unlawful bodily injury on the person or another." (emphasis added).    The California Court of Appeals, noting the statute's use of the disjunctive "or," has explained "'[d]uress' would be redundant in the [] statute if its meaning were no different than 'force,' 'violence,' 'menace,' or 'fear of immediate and unlawful bodily force.'" *People v. Schulz*, 2 Cal. App. 4th 999, 1005 (1992) (internal quotation omitted) (quotation marks altered).    Indeed, by statute, California defines duress as "a direct or implied threat of force, violence, danger, or *retribution* sufficient to coerce a reasonable person of ordinary susceptibilities to perform an act which otherwise would not have been performed, or acquiesce in an act which one otherwise would not have submitted."    Cal. Penal Code § 261(b)(1) (emphasis added).

    To satisfy his burden of showing a realistic possibility that California recognizes rape committed through non-physical force, *see Duenas-Alvarez*, 549 U.S. at 193, Gonzalez-Reyes directs the court's attention to an unpublished case, *People v. Serrano*, No. A104529, 2005 WL 615788, (Ct. App. Mar. 17, 2005).    The state court there upheld a rape conviction under Section 261(a)(2), even though duress was proven by the defendant's threat to release the victim's sex tape if the victim did not submit to sexual intercourse.    The *Serrano* court concluded that duress through retribution, as incorporated into Section 261(a)(2), is forcible "repayment or punishment, *neither of which is necessarily physical*."    *Id.* at *3 (emphasis added).[1]

---

[1] Gonzales-Reyes also cites *People v. Minsky*, 129 Cal. Rptr. 2d 583 (Ct. App. 2003), but that case undercuts his argument.    The California Court of Appeals defined duress by retribution as involving some "threat of

It is true that *Serrano* is a lone unpublished case. But we have recognized that "it cannot be that the presence of a 'realistic probability' under *Duenas–Alvarez* depends on whether a conviction is described in an unpublished rather than a published opinion." *Nicanor-Romero v. Mukasey,* 523 F.3d 922, 1005 (9th Cir. 2008). We thus assume for the categorical approach analysis that California Penal Code § 261(a)(2) criminalizes rape committed through non-physical deprivation of consent.

### 2. The generic federal definition of rape encompasses rape by non-physical duress and is a categorical match with California's rape statute.

We hold that California Penal Code § 261(a)(2)—which appears to recognize rape perpetrated through threats of non-physical force—is a categorical match with the generic federal definition of rape. And that means Gonzales-Reyes' state rape conviction is a valid predicate offense to qualify him as an aggravated felon under federal law.

The federal immigration statute at issue states that "the term 'aggravated felony' means . . . murder, rape, or sexual abuse of a minor[,]" but it does not define "rape." 8 U.S.C. § 1101(a)(43)(A). So we turn to normal tools of statutory interpretation, including "[d]ictionary definitions, federal laws, state laws, and the Model Penal Code." *Pugin v. Garland*, 599 U.S. 600, 604 (2023). We look to sources that establish the contemporary understanding of the relevant

---

danger." *Minsky* at 583. Minsky had convinced four victims that their loved ones had been jailed and would face harm in prison unless the victims had intercourse with him. *Id.* In describing the "danger" the victims perceived, the *Minsky* court noted that they feared that their loved ones, if jailed, would be "raped," "killed," or "physically harmed." *Id.*

term—the widespread and common understanding of the term when Congress enacted the law. *See Descamps v. United States*, 570 U.S. 254, 267 (2013); *see also Pugin*, 599 U.S. at 604, 609. In our case, the relevant date is 1996 when Congress passed the Illegal Immigration Reform & Immigrant Responsibility Act of 1996, which amended the INA. *See generally* Division C—Illegal Immigration Reform & Immigrant Responsibility Act of 1996, Pub. L. No. 104-208, 110 Stat. 3009-546 (1996).

We first look at the dictionary definition of "rape" as understood at the time Congress enacted the immigration provision. We examine the sixth and seventh editions of Black's Law Dictionary because they were published in 1990 and 1999, respectively. The sixth edition of Black's Law Dictionary defines rape to include "[u]nlawful sexual intercourse with a female without her consent . . . when the woman's resistance is overcome by force *or fear*, *or under other prohibitive conditions*." *Rape*, <u>Black's Law Dictionary</u> (6th ed. 1990) (emphasis added). In other words, the dictionary definition at the time encompassed rape committed through non-physical duress (*e.g.*, by "fear or under other prohibitive conditions").**[2]** The seventh edition

---

[2] The dissent notes that the sixth edition of Black's Law Dictionary also offered a different definition of rape that required the use or threat of force. But that second definition is merely summarizing the Model Penal Code's definition, as noted by the reference to "Model Penal Code, § 213.1." As explained later, we believe that the Model Penal Code's definition of rape as understood in 1962 does not necessarily reflect the more contemporary and broader definition of rape in 1996.

The dissent also refers to excerpts from the Merriam-Webster Dictionary of Law's definition of rape, but the full definition appears to be even broader than the one in Black's Law Dictionary: "unlawful sexual activity and *usually* sexual intercourse carried out forcibly or

of Black Law's Dictionary revised the definition of "rape," but it recognized that rape could be committed through non-physical duress: "Unlawful sexual activity . . . with a person . . . without consent and *usu[ally]* by force or threat of injury." *Rape*, Black's Law Dictionary (7th ed. 1999) (emphasis added).

Our circuit's case law also supports this broader generic definition of rape. In *Castro-Baez v. Reno*, we relied on the sixth edition of Black's Law Dictionary to conclude that rape by incapacitating a victim via drugging, intoxication, or anesthetic (*i.e.*, means other than brute force) falls within the generic federal understanding of rape. *See Castro-Baez*, 217 F.3d 1057, 1059 (9th Cir. 2000) (holding Cal. Penal Code § 261(a)(3) is a categorical match with federal generic definition). Similarly, we referenced the seventh edition of Black's Law Dictionary in *United States v. Yanez-Saucedo* in holding that rape need not involve physical force or injury to fall within the generic federal definition. *See Yanez-Saucedo*, 295 F.3d 991, 995-96 (9th Cir. 2002). The

---

under threat of injury against the will usually of a female or with a person who is beneath a certain age or incapable of valid consent because of mental illness, mental deficiency, intoxication, unconsciousness, or deception." *Rape*, Merriam-Webster's Dictionary of Law (1996) (emphasis added). In other words, it adopted an extremely broad definition of rape ("unlawful sexual activity") but recognized the more restrictive common law definition still used in certain states.

Finally, the dissent cites a recent 11th Circuit case stating that "in 1996 the word 'rape' was still commonly understood to conform to its traditional meaning." *Barrie v. U.S. Att'y Gen.*, 167 F. 4th 1315, 1329 (11th Cir. 2026). The issue there was whether digital penetration was considered rape in 1996; the government unsuccessfully argued that it did because "rape-analogous" statutes included digital penetration. That case did not deal with a force requirement and merely said that digital penetration is not rape under the common law definition.

appellant in that case argued, as here, that his conviction for third-degree rape under Washington law did not qualify as an "aggravated felony" within the meaning of the INA "because no element of force is found" in the state statute. *Id.* at 996 (alterations and emphasis in original). Relying on Black's Law Dictionary, we rejected that argument and held that his state rape conviction counted as an aggravated felony under federal immigration law.[3]

In response, Gonzales-Reyes relies on the Model Penal Code's more restrictive definition to argue that rape must implicate physical force or the threat of such force. *See* Model Penal Code § 213.1(2)(a) (defining rape as sexual intercourse by "force or by threat of imminent death, serious bodily injury, extreme pain or kidnapping"). To be sure, we sometimes reference the Model Penal Code. *Cf. Valdez v. Garland*, 28 F. 4th 72, 79-80 (9th Cir. 2022) (agreeing with BIA's partial reliance on MPC's definition of rape that excludes sexual intercourse through deceit).

But when faced with a conflict between potentially outdated provisions in the Model Penal Code and contemporaneous dictionary definitions, we think the latter

---

[3] According to the dissent, *Yanez-Saucedo* is not instructive because it relied on Washington's interpretation of its rape statute as requiring some level of force. That is true, but it does not undermine the key point that our court adopted a broad generic federal definition of rape. The court in *Yanez-Saucedo* held that Washington's definition of rape (which appeared to require some force even for third-degree rape) is a categorical match with the generic federal definition of rape because the latter is broader in that it can be committed by force or non-force. 295 F.3d at 996 (stating that a "generic contemporary definition of rape, which can, but does not necessarily, include an element of physical force beyond that required for penetration"). In other words, *Yanez-Saucedo* recognized that rape under federal law does not require the use of force.

more accurately represents the meaning of statutory text enacted by Congress.  The Model Penal Code definition is from 1962—over three decades before the enactment of the immigration provision at issue—and sheds less light on the meaning of "rape" as understood in 1996.  Indeed, many states have since rejected several aspects of the Model Penal Code's definition of rape, including its gender requirements, seeming immunity for marital rape, and the requirement for the use of force.  *See* Model Penal Code § 213.1 ("A male who has sexual intercourse with a female not his wife is guilty of rape if . . .").

The dissent argues that under the categorical approach we cannot accept a "plausible" definition of a word and assume that it is the controlling definition.  That is true—and beside the point here.  We are not referring to a highly technical or bespoke definition of "rape."  By 1996, the definition of rape had become broader across multiple jurisdictions to encompass acts committed through non-physical force or threats of non-physical coercion.  2 W. LaFave, Substantive Criminal Law § 17.1(c) at 608-09 (2d ed. 2003) ("the crime of rape looks considerably different from the traditional approach of years past" as a "consequence of reforms").  As one leading criminal law treatise noted, the law by the turn of the century began recognizing "a broader range of impositions as a basis for finding coercive conduct by the defendant, including . . . certain nonphysical coercion."  *Id.*

In line with the reasoning of *Castro-Baez*, *Yanez-Saucedo*, and contemporaneous dictionary definitions, we hold that the federal generic definition of "rape" is a categorical match with California's statutory rape

provision.[4]   In turn, it means that a rape conviction under Cal. Penal Code § 261(a)(2) qualifies as an aggravated felony under the INA.   Because Gonzalez-Reyes was convicted of an aggravated felony, he cannot show "fundamental unfairness" under Section 1326(d)(3), and his collateral attack on his order of removal fails.

## CONCLUSION

We **AFFIRM** the district court's denial of Gonzalez-Reyes' motion to dismiss charges for illegal reentry in violation of 8 U.S.C. § 1326.

---

de Alba, Circuit Judge, dissenting:

Higinio Alejandro Gonzalez-Reyes seeks to dismiss his indictment for illegal reentry under 8 U.S.C. § 1326(a) by collaterally attacking his underlying removal order.   A "challenged removal order may not be used to establish any element of an illegal reentry offense" when a defendant satisfies the three requirements set forth in 8 U.S.C. § 1326(d). *United States v. Valdivias-Soto*, 112 F.4th 713, 722 (9th Cir. 2024).

Gonzalez-Reyes was removed from this country because the government deemed his conviction under California's rape statute, Cal. Penal Code § 261(a)(2), an aggravated

---

[4] We do not think it would be fruitful to look at a state-by-state analysis of the definition of rape to determine the generic federal definition because, as the dissent acknowledges, states in the late 1990s had widely varying definitions. *Cf. Diaz-Rodriguez v. Garland*, 55 F.4th 697, 720-21 (9th Cir. 2018) (suggesting state surveys are of limited use when "states have developed [] divergent and overlapping definitions" of the relevant crime).

felony within the meaning of the Immigration and Nationality Act ("INA"). 8 U.S.C. §§ 1227(a)(2)(A)(iii), 1101(a)(43)(A). We apply the categorical approach articulated in *Taylor v. United States*, 495 U.S. 575 (1990), when determining whether a state offense qualifies as an aggravated felony under the INA. This standard implores us to "look not to the facts of the particular prior case, but rather to the state statute defining the crime of conviction." *Gonzales v. Duenas-Alvarez*, 549 U.S. 183, 186 (2007) (citing *Taylor*, 495 U.S. at 599–600).

To be sure, the facts underlying Gonzalez-Reyes' conviction under Cal. Penal Code § 261(a)(2) are deplorable. Nonetheless, Cal. Penal Code § 261(a)(2) is not a categorical match to its federal analogue, rendering Gonzalez-Reyes' predicate removal order "fundamentally unfair" under Section 1326(d)(3). Gonzalez-Reyes also satisfies § 1326(d)(1) and (d)(2)'s procedural requirements. Accordingly, I would reverse the district court's denial of Gonzalez-Reyes' motion to dismiss his indictment and respectfully dissent.

## DISCUSSION

A noncitizen brings a successful collateral attack when they demonstrate that (1) they "exhausted any administrative remedies that may have been available to seek relief against the order; (2) the deportation proceedings at which the order was issued improperly deprived the [noncitizen] of the opportunity for judicial review; and (3) the entry of the order was fundamentally unfair." 8 U.S.C. § 1326(d). In *United States v. Palomar-Santiago*, the Supreme Court clarified that "each of the statutory requirements of § 1326(d) is mandatory." 593 U.S. 321, 329 (2021).

## I. Gonzalez-Reyes could not exhaust administrative remedies because expedited removal proceedings do not provide a mechanism to challenge legal conclusions.

"[I]n certain circumstances, administrative remedies are not 'available' and therefore need not be exhausted to satisfy a statutory exhaustion requirement." *Valdivias-Soto*, 112 F.4th at 730 (citing *Ross v. Blake*, 578 U.S. 632, 642 (2016)); *see also United States v. Nunez*, 140 F.4th 1157, 1163 (9th Cir. 2025). "[A]n administrative procedure is unavailable when (despite what regulations or guidance materials may promise)" (1) "it operates as a simple dead end," (2) it is "so opaque that it becomes, practically speaking, incapable of use," or (3) "administrators thwart [claimants] from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Ross*, 578 U.S. at 643–44 (citation modified).

Here, Gonzalez-Reyes had no administrative remedies available to him to challenge legal conclusions in his removal proceedings. 8 U.S.C. § 1228(b) authorizes Department of Homeland Security officers, outside the purview of an immigration judge, to preside over expedited removals of noncitizens who were convicted of a qualifying aggravated felony. In January 2023, Gonzalez-Reyes was processed through this type of proceeding and removed from the United States. The same day Gonzalez-Reyes was removed, a deportation officer served him with a Notice of Intent to Issue a Final Administrative Removal Order ("Notice of Intent") and a standard Final Administrative Removal Order ("FARO"). Both forms advised Gonzalez-Reyes that he was deportable because he had been convicted of an aggravated felony—i.e., Cal. Penal Code § 261(a)(2).

Even though the Notice of Intent includes both "allegations of fact and conclusions of law," *see* 8 C.F.R. § 238.1 (b)(2)(i), the form indicated that Gonzalez-Reyes could only contest his conviction under Cal. Penal Code § 261(a)(2), but not the classification of this offense as an aggravated felony within the meaning of the INA. Further, the regulatory scheme of expedited removals permit noncitizens to challenge the "allegations" and "findings" included in the Notice of Intent via "*affidavit(s)*, documentary *information*, or other specific *evidence*"— strongly suggesting that noncitizens may only raise factual challenges. 8 C.F.R. § 238.1(c)(2)(i)–(ii) (emphasis added); *see also* 8 C.F.R. § 238.1(d)(2)(ii)(A) (indicating that if the deciding officer "finds that the record of proceeding . . . raises a genuine issue of material *fact*," they may transfer the case to an immigration judge (emphasis added)).

The Third, Fourth, and Fifth Circuits have also persuasively concluded that expedited removal proceedings do not allow noncitizens to challenge the legal basis for their removal. *See Barradas Jacome v. Att'y. Gen. United States*, 39 F.4th 111, 116 (3d Cir. 2022); *Etienne v. Lynch*, 813 F.3d 135, 138 (4th Cir. 2015); *Valdiviez-Hernandez v. Holder*, 739 F.3d 184, 187 (5th Cir. 2013). The Eleventh Circuit held the opposite while employing faulty reasoning.[1] *See Malu v. U.S. Att'y Gen.*, 764 F.3d 1282, 1288–89 (11th Cir. 2014). In so holding, the Eleventh Circuit relied on 8 C.F.R. § 238.1(d)(2)(iii), "which states that an officer may transfer

---

[1] The Seventh Circuit has "arguably come out on both sides of the issue." *Barradas Jacome*, 39 F.4th at 116 n.5; *compare Eke v. Mukasey*, 512 F.3d 372, 377–78 (7th Cir. 2008), *with Fonseca-Sanchez v. Gonzales*, 484 F.3d 439, 444–45 (7th Cir. 2007).

removal proceedings to an immigration judge if the [noncitizen] objects to the notice of removal on the ground that she is 'not amenable' to the expedited removal proceedings." *Id.* at 1288. For the Eleventh Circuit, "[w]hether a[] [noncitizen] is amenable to expedited removal proceedings could involve either an issue of law or fact," and "it would be nonsensical to limit the [noncitizen's] rebuttal to allegations of fact, but save for later any rebuttal to conclusions of law." *Id.*

However, the Board of Immigration Appeals ("BIA") has expressed that they "lack [] authority" to hear "challenge[s] to [a noncitizen's] status as an aggravated felon." *Barradas Jacome*, 39 F.4th at 115 n.4 (citation modified); *Quinteros v. Att'y Gen. of United States*, 945 F.3d 772, 781 (3d Cir. 2019) (observing that the BIA "had the opportunity to consider [the noncitizen's] challenge to his removability as an aggravated felon and declined to do so on the merits"); *see also* 8 C.F.R. § 1003.1(b). As such, even if a deciding officer terminates expedited removal proceedings and transfers the matter to an immigration judge, that "administrative procedure is unavailable [because] . . . it operates as a simple dead end." *See Ross*, 578 U.S. at 643; *Palomar-Santiago*, 593 U.S. at 327 (exhausting administrative remedies requires "appealing the immigration judge's decision to the BIA"). Gonzalez-Reyes thus had no opportunity to challenge the classification of his conviction under Cal. Penal Code § 261(a)(2), and therefore, he has not failed to exhaust administrative remedies as Section 1326(d)(1) requires.

## II. We are bound by *Valdivia-Flores* to conclude that Gonzalez-Reyes' waiver of his right to judicial review was not considered and intelligent.

"Noncitizens who are unable to appeal their removal order because they entered a waiver of their right to appeal that was not considered and intelligent have been improperly deprived of judicial review." *Valdivias-Soto*, 112 F.4th at 733; *see also Nunez*, 140 F.4th at 1165 ("For a waiver of a BIA appeal to be valid, it must be considered and intelligent."). "The government bears the burden of proving valid waiver in a collateral attack of the underlying removal proceedings," and must "prove by 'clear and convincing evidence' that the [noncitizen] received 'adequate advisement of the consequences of his waiver of appeal.'" *United States v. De La Mora-Cobian*, 18 F.4th 1141, 1148 (9th Cir. 2021) (quoting *United States v. Ramos*, 623 F.3d 672, 680–81 (9th Cir. 2010)); *Nunez*, 140 F.4th at 1165.

In *United States v. Valdivia-Flores*, we held that the deficiencies in a Notice of Intent—specifically, that the document "did not explicitly inform [a noncitizen] that he could refute, through either an administrative or judicial procedure, the legal conclusion underlying his removability"—led to a noncitizen's "waiver of the right to seek judicial review [that] was not considered and intelligent." 876 F.3d 1201, 1205–06 (9th Cir. 2017), *overruled on other grounds by Alfred v. Garland*, 64 F.4th 1025 (9th Cir. 2023). The government argues that *Valdivia-Flores* does not control here because it did not engage with Section 1326(d)(2)'s requirement and thus was subsequently abrogated by the Supreme Court in *Palomar-Santiago*.[2] The

---

[2] The government also incorrectly asserts that Gonzalez-Reyes waived his right to judicial review when he checked the box in the Notice of

government is incorrect—in *Valdivia-Flores*, we did not excuse compliance with Section 1326(d)(2) and instead provided specific reasons, in accord with *Palomar-Santiago*, why a deficient Notice of Intent deprives noncitizens of judicial review.

Namely, we refused to "rely on the signed document purportedly agreeing to the waiver," citing *United States v. Gomez*, 757 F.3d 885, 895 (9th Cir. 2014), and "evaluate[d] the surrounding circumstances to determine whether the government can overcome the presumption against waiver." *Id.* at 1205. We observed that the Notice of Intent suggested that "removability could only be contested on factual grounds" and recognized that these "deficiencies are magnified" in expedited removal proceedings because noncitizens are "not represented and never had the benefit of appearing before an immigration judge, who, we presume, would have adequately conveyed both his appeal options and the finality associated with waiving appeal." *Id.* at 1206 (citation modified). We further underscored that the government, like in this appeal, "provide[d] no evidence that an immigration officer ever met with [the noncitizen] to explain the form or the issues it raised" and "merely relie[d] on the sufficiency of the form's text to communicate [the noncitizen's] options." *Id.* "Under these circumstances, we conclude[d] that [the noncitizen's] waiver of the right to seek judicial review was not considered and intelligent." *Id.*

---

Intent stating the following: "I understand that I have the right to remain in the United States for 14 calendar days in order to apply for judicial review. I do not wish this opportunity. I waive this right." However, by checking that box, Gonzalez-Reyes only waived his right to stay in the United States for 14 days and not his right to appeal.

However, the government is correct that *Valdivia-Flores* did not consider whether the language contained in a standard FARO adequately advises noncitizens of the consequences of waiving judicial review.  Here, the same day Gonzalez-Reyes received the Notice of Intent, he also received a FARO that stated he had "30 days in which to appeal this decision to the United States Court of Appeals for the Ninth Circuit."  Although the FARO notified Gonzalez-Reyes of his appellate rights generally, it suffers from the same deficiencies as the Notice of Intent.  Notably, the FARO does not expressly inform Gonzalez-Reyes that "conclusions of law" or the "aggravated felony" determination could be appealed to this court.  The deportation officer who signed the FARO also referenced and relied on the "*allegations* set forth in the Notice of Intent . . . and *evidence* contained in the administrative record" to conclude via "clear, convincing, and unequivocal *evidence* that [Gonzalez-Reyes was] deportable as a[] [noncitizen] convicted of an aggravated felony . . .," further suggesting that the appellate rights Gonzalez-Reyes could exercise were limited to factual challenges.  Because the government fails to meet its burden of demonstrating that Gonzalez-Reyes validly waived his appellate rights, he was deprived of the opportunity for judicial review under Section 1326(d)(2).

## III. Gonzalez-Reyes' predicate removal order was "fundamentally unfair" within the meaning of Section 1326(d)(3).

"A removal order is 'fundamentally unfair,' if (1) 'the [noncitizen's] due process rights were violated by defects in his underlying deportation proceeding, and (2) he suffered prejudice as a result of the defects.'"  *United States v. Rojas-Pedroza*, 716 F.3d 1253, 1263 (9th Cir. 2013) (quoting

*United States v. Ubaldo-Figueroa*, 364 F.3d 1042, 1048 (9th Cir. 2004)); *see also Nunez*, 140 F.4th at 1167.

## A. The deficiencies in the Notice of Intent and the FARO deprived Gonzalez-Reyes of Due Process.

"The Due Process Clause of the Fifth Amendment requires that a[] [noncitizen] in immigration proceedings be 'made aware that he has a right to seek relief. . . .'" *United States v. Melendez-Castro*, 671 F.3d 950, 954 (9th Cir. 2012) (per curiam) (quoting *United States v. Arrieta*, 224 F.3d 1076, 1079 (9th Cir. 2000)); *Valdivia-Flores*, 876 F.3d at 1206 (A defendant is "deprived of due process" when his "waiver of the right to seek judicial review was not considered and intelligent"); *accord Valdivias-Soto*, 112 F.4th at 722. As discussed *supra*, neither the Notice of Intent nor the FARO informed Gonzalez-Reyes that he could appeal the classification of his conviction under Cal. Penal Code § 261(a)(2), and therefore, violated his due process rights.

## B. Cal. Penal Code § 261(a)(2) is not a categorical match to an aggravated felony under the INA and this misclassification prejudiced Gonzalez-Reyes.

"[E]ven if the government might have been able to remove [Gonzalez-Reyes] on other grounds through a formal removal proceeding, [Gonzalez-Reyes'] removal on illegitimate grounds is enough to show prejudice." *United States v. Ochoa-Oregel*, 904 F.3d 682, 685–86 (9th Cir. 2018); *see also United States v. Camacho-Lopez*, 450 F.3d 928, 930 (9th Cir. 2006) (holding that because the "Notice to Appear charged [a noncitizen] as removable *only* for having committed an aggravated felony" when the noncitizen's prior conviction "did not fit that [aggravated felony] definition," he "was removed when he should not

have been and clearly suffered prejudice" (emphasis in original)).  For the reasons below, Gonzalez-Reyes satisfies the prejudice prong of Section 1326(d)(3).

### 1.  Cal. Penal Code § 261(a)(2)

In California, "[r]ape is an act of sexual intercourse accomplished . . . against a person's will by means of force, violence, *duress*, menace, or fear of immediate and unlawful bodily injury on the person or another."  Cal. Penal Code § 261(a)(2) (emphasis added).   The California Court of Appeals has clarified that "'[d]uress' would be redundant in the [] statute[] if its meaning were no different than 'force,' 'violence,' 'menace,' or 'fear of immediate and unlawful bodily injury.'"  *People v. Schulz*, 2 Cal. App. 4th 999, 1004 (1992); *see also* Cal. Penal Code § 261(b)(1) (defining duress as, inter alia, "a direct or implied threat of . . . *retribution* sufficient to coerce a reasonable person of ordinary susceptibilities to perform an act which otherwise would not have been performed, or acquiesce in an act to which one otherwise would not have submitted." (emphasis added)).   In *People v. Serrano*, the California Court of Appeals defined retribution in this context as "repayment or punishment, *neither of which is necessarily physical*."  2005 WL 615788, at *3 (Cal. App. March 17, 2005) (emphasis added) (upholding a rape conviction under Cal. Penal Code 261(a)(2) where the duress element was satisfied by the defendant's threat to release the victim's sex tape).

Here, Gonzalez-Reyes' conviction under Cal. Penal Code § 261(a)(2) is an "an 'aggravated felony' under the INA only if the least of the acts criminalized by the state statute falls within the generic federal definition of" rape. *See Esquivel-Quintana v. Sessions*, 581 U.S. 385, 390 (2017).   Put differently, California's rape statute is a

categorical match to its federal analogue so long as the latter is commonly understood to criminalize rape by retribution or nonphysical, coercive, means.

## 2. Generic Federal Definition of Rape

In 1996, Congress added the term "rape" to the INA as an aggravated felony without expressly defining the term. *See* Illegal Immigration Reform and Immigrant Responsibility Act of 1996, Pub. L. No. 104-208, 110 Stat. 3009-546, 3009-627; 8 U.S.C. § 1101(a)(43)(A) ("[t]he term 'aggravated felony' means . . . murder, rape, or sexual abuse of a minor"). We, therefore, must "give the term its ordinary meaning" in 1996, *Taniguchi v. Kan Pac. Saipan, Ltd.*, 566 U.S. 560, 566 (2012), using "normal tools of statutory interpretation," *Esquivel-Quintana*, 581 U.S. at 391. *See Descamps v. United States*, 570 U.S. 254, 257 (2013) ("the 'categorical approach' . . . compare[s] the elements of the statute forming the basis of the defendant's conviction with the elements of the 'generic' crime—i.e., the offense as *commonly understood*" (emphasis added)); *Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 400 (2024) ("[E]very statute's meaning is fixed at the time of enactment." (citation modified)). To accomplish this, we turn to "[d]ictionary definitions, federal laws, state laws, and the Model Penal Code." *Pugin v. Garland*, 599 U.S. 600, 604 (2023).

### a. Dictionary Definitions

The majority relies on the sixth and seventh editions of Black's Law Dictionary, respectively published in 1990 and 1999, to conclude that the generic federal definition of rape encompasses rape by non-physical duress. However, the definitions of rape included in these editions of Black's Law Dictionary and in Merriam-Webster's Dictionary of Law, published in 1996, undermine this conclusion.

First, the sixth edition of Black's Law Dictionary defined rape to include "[u]nlawful sexual intercourse with a female without her consent . . . when the woman's resistance is overcome by force or *fear*, or under *other prohibitive conditions*." *Rape*, Black's Law Dictionary (6th ed. 1990) (quoting *State v. Lora*, 213 Kan. 184, 192 (1973) (emphasis added)). This edition then continued to define rape as follows:

> A male who has sexual intercourse with a female not his wife is guilty of rape if: (a) *he compels her to submit by force or by threat of imminent death, serious bodily injury, extreme pain or kidnapping, to be inflicted on anyone*; or (b) he has substantially impaired her power to appraise or control her conduct by administering or employing without her knowledge drugs, intoxicants or other means for the purpose of preventing resistance; or (c) the female is unconscious; or (d) the female is less than 10 years old.[3]

*Id.* (emphasis added). This subsequent explanatory paragraph provides helpful context and suggests that the

---

[3] The majority argues that we should disregard this subsequent definition because it relied on the Model Penal Code's ("MPC") definition of rape as it was understood in 1962 and, therefore, does not reflect the definition of rape in 1996. However, the fact that the sixth edition included the MPC's definition undercuts the majority's argument because it demonstrates that the MPC's understanding of rape, at least as of 1990, was still instructive. Moreover, using the majority's logic, we should also disregard the definition in this edition that included rape accomplished by "fear, or under other prohibitive conditions" because it

terms "fear" or "other prohibitive conditions" within the sixth edition's definition of rape is tied to threats of physical harms. *See Whitman v. Am. Trucking Associations*, 531 U.S. 457, 466 (2001) ("Words that can have more than one meaning are given content, however, by their surroundings"); *United States v. Santos*, 553 U.S. 507, 512 (2008) ("context gives meaning").

Moreover, the Supreme Court has clarified that just because "a definition is broad enough to encompass one sense of a word does not establish that the word is *ordinarily* understood in that sense." *Taniguchi*, 566 U.S. at 568 (emphasis in original). The majority thus commits legal error when it conflates *plausible* ways rape may be defined in 1996—by, for example, interpreting "fear" or "other prohibitive conditions" in the sixth edition of Black's Law Dictionary as encompassing non-physical duress—with how these terms were *commonly understood* at the time Congress added rape to the INA as an aggravated felony.

Second, the seventh edition of Black Law's Dictionary further suggests that the generic federal definition of rape is not capacious enough to include rape accomplished by non-physical threats. *See Rape*, Black's Law Dictionary (7th ed. 1999) (defining rape as "[u]nlawful sexual activity . . . with a person . . . without consent and *usu[ally] by force or threat of injury*" (emphasis added)). Yet the majority asserts that the seventh edition also recognized a definition of rape by non-physical duress. This argument is flawed because it improperly imports rape by non-physical threats into the ambiguous phrase, "[u]nlawful sexual activity . . . without consent." *See id.*; *see also Moncrieffe v. Holder*, 569 U.S.

---

is premised on a Kansas Supreme Court decision published in 1973. *See Lora*, 213 Kan. at 192.

184, 205 (2013) ("[W]e err on the side of underinclusiveness because ambiguity in criminal statutes referenced by the INA must be construed in the noncitizen's favor.").

Third, Merriam-Webster's Dictionary of Law defined rape as "unlawful sexual activity and *usu[ally]* sexual intercourse carried out forcibly or under *threat of injury* against the will" of a person.[4] *Rape*, Merriam-Webster's Dictionary of Law (1996) (emphasis added). It then explained that the "common-law crime of rape involved a man having carnal knowledge of a woman not his wife through *force and against her will*. . . ." *Id.* (emphasis added); *see also Kousisis v. United States*, 605 U.S. 114, 124 (2025) ("When Congress uses a term with origins in the common law, we generally presume that the term brings the old soil with it." (citation modified)).

Merriam-Webster's Dictionary of Law also recognized that "[w]hile some states maintain[ed] essentially this definition of rape, most have broadened its scope esp[ecially] in terms of the sex of the persons and the nature of the acts involved." *Rape*, Merriam-Webster's Dictionary of Law (1996). As to the "nature of the acts involved," states typically codified this broader scope in related crimes—e.g., "*first degree sexual assault*, *sexual battery*, *unlawful sexual intercourse*, and *first degree sexual abuse*." *See id.* (emphasis in original); *see also Barrie v. U.S. Att'y Gen.*, 167 F.4th 1315, 1329 (11th Cir. 2026) ("It is significant that

---

[4] The majority asserts that Merriam-Webster's initial use of "unlawful sexual activity" reflects an extremely broad definition of rape. Even assuming that, as discussed above, we are not concerned with how rape *may* have been defined in 1996. Instead, we are concerned with how rape was *commonly* defined in 1996, and Merriam-Webster's use of "*usu[ally]* . . . carried out forcibly or under *threat of injury*" depicts that common understanding.

the majority of states that had an offense called 'rape' defined it consistent with that word's traditional, common-law meaning, while the majority of states that defined their 'rape-analogous' statutes broader than common-law rape did so using different names. . .").[5]   Taken together, these contemporaneous dictionary definitions demonstrate that California's definition of rape is broader than what Congress understood that term to be in 1996, and thus Cal. Penal Code § 261(a)(2) is not an aggravated felony within the meaning of the INA.

### b.   Ninth Circuit Jurisprudence

The majority argues that our caselaw supports a broader generic federal definition of rape, citing *Castro-Baez v. Reno*, 217 F.3d 1057, 1059 (9th Cir. 2000) and *United States v. Yanez-Saucedo*, 295 F.3d 991, 995–96 (9th Cir. 2002), which renders the generic federal definition a categorical match with California's statutory rape provision.   The majority is incorrect because they misapply or misinterpret these cases, and *Yanez-Saucedo* relies, in part, on faulty reasoning.

---

[5] The majority is correct that in *Barrie*, the Eleventh Circuit did not directly discuss a force requirement in rape.   However, this case is instructive because it persuasively argues that in 1996, "Congress intended to define 'rape' according to" its "traditional, common-law definition," which included a force requirement according to the seventh edition of Black Law's Dictionary and Meriam-Webster's Dictionary of Law.   *See Barrie*, 167 F.4th at 1323–24; *see also Rape*, Black's Law Dictionary (7th ed. 1999) ("At common law, unlawful sexual intercourse committed by a man with a woman not his wife through *force* and against her will." (emphasis added)); *Rape*, Merriam-Webster's Dictionary of Law (1996) ("The common-law crime of rape involved a man having carnal knowledge of a woman not his wife through *force and against her will*. . . ." (emphasis added)).

In *Castro-Baez*, relying on the sixth edition of Black Law's Dictionary, we held that generic federal rape includes convictions under Cal. Penal Code § 261(a)(3), which penalizes rape by incapacitation. 217 F.3d at 1059. Notably, the sixth edition of Black Law's Dictionary expressly defined rape as, inter alia, the act of "substantially impair[ing] [a person's] power to appraise or control her conduct by administering or employing without her knowledge drugs, intoxicants or other means for the purpose of preventing resistance." *Rape*, Black's Law Dictionary (6th ed. 1990). As such, "there is no doubt that the conduct proscribed by § 261(a)(3) falls within the 'ordinary, contemporary, and common' understanding of the term rape." *Castro-Baez*, 217 F.3d at 1059. *Castro-Baez* is therefore not helpful for our purposes because the provision of California's rape statute at issue in that case criminalizes a form of rape accomplished by means other than force that was expressly captured in a contemporaneous dictionary.

In *Yanez-Saucedo*, we held that Washington's third-degree rape statute, which criminalizes rape by threat of unlawful harm to the property rights of the victim, fits within the generic federal definition of rape. 295 F.3d at 996. This holding, however, hinged in part on our determination that "Washington case law clearly recognizes that there is a degree of force inherent in third-degree rape," making it a categorical match with the federal analogue. *See id.* at 995–96 (citing various Washington cases in support). For this case to control our decision here, we must also conclude that California recognizes that there is a degree of force, beyond that required for penetration, inherent in rape by retribution. California does not, and the majority fails to make this argument all together. *See Serrano*, 2005 WL 615788, at *3 ("Duress *inherently involves psychological coercion*, as the

term duress would be redundant if its meaning were no different from the terms force, violence, menace, or fear of bodily injury that are also listed in section 261." (emphasis added)).

Further, in *Yanez-Saucedo*, we incorrectly determined that the "generic, contemporary definition of rape, . . . *can, but does not necessarily,* include an element of physical force beyond that required for penetration." *See Yanez-Saucedo*, 295 F.3d at 996 (emphasis added). For this conclusion, we erroneously relied on our reasoning in *Castro-Baez*, which, as discussed *supra*, is not helpful in our assessment of rape by non-physical threats such as a threat to property, and *United States v. Riley*, 183 F.3d 1155 (9th Cir. 1999). *See id.* In *Riley*, we held that Louisiana's "simple rape" provision, which does not have a force requirement, "qualifies as a crime of violence under the Sentencing Guideline's career offender provision." 183 F.3d at 1158–61.

However, whether a state offense qualifies as a crime of violence under the federal Sentencing Guidelines versus an aggravated felony under the INA are analytically distinct inquiries. The former asks whether the state statute criminalizes "conduct that presents a serious potential risk of physical injury to another"—a risk always present in nonconsensual sex regardless of how it is achieved. *See id.* at 1158–59 (noting that "rape also subjects the victim to the physical risks associated with sexually transmitted diseases and pregnancy"). Whereas the latter asks whether the "least of the acts criminalized by the state statute falls within the generic federal definition of" the crime. *Esquivel-Quintana*, 581 U.S. at 390.

### c. State Statutes

Finally, a multijurisdictional analysis also supports the conclusion that, in 1996, most states that criminalized rape accomplished by threats commonly linked it with a threat of physical injury. *See* Patricia J. Falk, *Rape by Fraud and Rape by Coercion*, 64 Brook. L. Rev. 39, 89–131 (1998) (surveying state criminal statutes prohibiting various forms of rape); *see also Esquivel-Quintana*, 581 U.S. at 396 n.3 (explaining that analysis of contemporaneous state statutes "is not required by the categorical approach" but "can be useful insofar as it helps shed light on the common understanding and meaning of the federal provision being interpreted" and aids statutory interpretation "by offering useful context" (citation modified)). In *Rape by Fraud and Rape by Coercion*, written two years after rape was added to the INA as an aggravated felony, Falk recognized a category of state rape "statutes, appearing in approximately twenty jurisdictions, [that] *deviate* from rape laws by substituting *non-physical forms of coercion* for the *traditional* requirement of physical force or *threat of physical force*." Falk, 64 Brook. L. Rev. at 119 (emphasis added).

In sum, the majority erred in holding that the generic federal definition of rape in 8 U.S.C. § 1101(a)(43)(A) includes rape by non-physical threats and that Gonzalez-Reyes' conviction under Cal. Penal Code § 261(a)(2) is a categorical match.[6] As a result, Gonzalez-Reyes was

---

[6] Typically, if a state statute is not a categorical match, we next ask whether the modified categorical approach applies. *See Syed v. Barr*, 969 F.3d 1012, 1017 (9th Cir. 2020) ("If the elements of the statute are overbroad, we may continue on with the analysis if the criminal statute is, as they say, divisible." (citation modified)); *see also Descamps*, 570 U.S. at 263–64 (concluding that a divisible statute lists alternative elements and creates different crimes); *Mathis v. United States*, 579 U.S.

removed on illegitimate grounds, which is enough to demonstrate prejudice—and thus, fundamental unfairness— under Section 1326(d)(3).**[7]** *See Ochoa-Oregel*, 904 F.3d at 685–86; *Camacho-Lopez*, 450 F.3d at 930.

## CONCLUSION

For the reasons above, Gonzalez-Reyes satisfies all of Section 1326(d)'s three mandatory requirements. I, therefore, would reverse the district court's denial of

---

500, 504–06 (2016) (holding that statutes are indivisible if it "enumerates various factual means of committing a single element"). Here, however, the government concedes divisibility. Moreover, the California Supreme Court has indicated that Cal. Penal Code § 261 is not a divisible statute, rendering the modified categorical approach likely inapplicable. *See People v. Collins*, 54 Cal. 2d 57, 59 (1960), *abrogated on other grounds by People v. Lohbauer*, 29 Cal. 3d 364 (1981) ("The subdivisions of section 261 do not state different offenses but merely define the different circumstances under which an act of intercourse constitutes the crime of rape.").

[7] The government additionally argues that Gonzalez-Reyes cannot demonstrate prejudice because even if his rape conviction did not make him an aggravated felon, his conviction under Cal. Penal Code § 273.5(a) did. Cal. Penal Code § 273.5(a) punishes anyone "who willfully inflicts corporal injury resulting in a traumatic condition upon a victim. . . ." That crime fits another listed offense in the INA, "crime of violence" under § 1101(a)(43)(F). We have repeatedly held that a conviction under Cal. Penal Code § 273.5(a) is categorically a "crime of violence" within the meaning of the INA. *See, e.g.*, *Banuelos-Ayon v. Holder*, 611 F.3d 1080, 1084–85 (9th Cir. 2010). However, the government raises this argument for the first time on appeal, and the record does not indicate what sentence Gonzalez-Reyes received for his conviction under § 273.5(a). *See* 8 U.S.C. § 1101(a)(43)(F) (defining a crime of violence as requiring a term of imprisonment of at least one year). As such, it would be improper to consider it. *Raich v. Gonzales*, 500 F.3d 850, 868 (9th Cir. 2007) ("It is a long-standing rule in the Ninth Circuit that, generally, we will not consider arguments that are raised for the first time on appeal." (citation modified)).

Gonzalez-Reyes' motion to dismiss his indictment. Respectfully, I dissent.